John M. QUARTY, Personal representative of the Estate of Angele C. Quarty; Elizabeth B. Cherne, Plaintiffs–Appellants,

v.

UNITED STATES of America, Defendant–Appellee.

No. 97–16942.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 5, 1998.

Decided March 30, 1999.

Robert J. Rosepink, Rosepink & Estes, Scottsdale, Arizona, for the plaintiffs-appellants.

John A. Dudeck, Jr., Tax Division, United States Department of Justice, Washington, D.C., for the defendant-appellee.

Daniel J. Popeo, Washington Legal Foundation, Washington, D.C., and Joseph E.

* The Honorable Robert J. Bryan, United States District Judge for the Western District of Wash-

Schmitz, Patton Boggs, Washington, D.C., for amici curiae in support of appellants. Allied Educational Foundation, Washington Legal Foundation, U.S. Senators Sam Brownback, Dan Coats, Paul D. Coverdell, Larry E. Craig, Rod Grams, Kay Bailey Hutchison, Connie Mack, John McCain, Olympia J. Snowe, and U.S. Representatives Dick Armey, Bob Barr, Gerald B.H. Solomon.

Before: FLETCHER and TASHIMA, Circuit Judges, and BRYAN, District Judge.*

TASHIMA, Circuit Judge:

Section 13208 of the Omnibus Budget Reconciliation Act of 1993 ("Section 13208" of "OBRA 1993"), Pub.L. No. 103–66, 107 Stat. 312, 469 (1993), set the maximum federal estate and gift tax rates at 53 % and 55 %. Section 13208 was enacted on August 10, 1993, and provided that these rates apply to the estates of decedents dying and gifts made after December 31, 1992. *See id.* This case presents the question of whether the application of these tax rates during the eight-month period prior to the statute's enactment violates the Due Process Clause or Takings Clause of the Fifth Amendment of the United States Constitution, or the Constitution's prohibition on direct taxation without apportionment. *See* U.S. Const. art I, § 2, cl. 3 & § 9, cl. 4. The district court held that the retroactive application of these tax rates was constitutional; accordingly, it granted the government's motion to dismiss this tax refund suit. We have jurisdiction under 28 U.S.C. § 1291 and we affirm.

I.

For nine years prior to January 1, 1993, the maximum federal estate and gift tax rates were 53 % and 55 %. *See National Taxpayers Union, Inc. v. United States,* 68

ington, sitting by designation.

F.3d 1428, 1430 n. 1 (D.C.Cir.1995). These rates were originally "enacted to be in effect only for calendar year 1984, after which the top rate was to drop to 50 %." *Id.* at 1430 n. 1 (citing Economic Recovery Act of 1981, Pub.L. No. 97–34, § 402(a), (b), 95 Stat. 172, 300 (1981)). In 1984, however, Congress extended the 53 % and 55 % tax rates through 1987. *See* Deficit Reduction Act of 1984, Pub.L. No. 98–369, § 21, 98 Stat. 494, 506 (1984). In 1987, Congress again extended these rates through January 1, 1993. *See* Omnibus Budget Reconciliation Act of 1987, Pub.L. No. 100–203, § 10401, 101 Stat. 1330–430 (1987); *National Taxpayers,* 68 F.3d at 1430 n. 1 (noting same). Late in 1992, Congress attempted to extend the higher rates once more, but President Bush pocket vetoed the bill. *See* H.R. 11, § 3006, *reported in* H.R. Conf. Rep. No. 1034, 102d Cong., 2d Sess. 178–79 (1992). Thus, on January 1, 1993, the highest estate and gift tax rates fell to 50 %. *See National Taxpayers,* 68 F.3d at 1430 n. 1.

In February 1993, shortly after taking office, President Clinton proposed restoring the 53 % and 55 % tax rates, effective January 1, 1993. *See id.* On August 10, 1993, President Clinton signed OBRA 1993, which included this proposal. Specifically, Section 13208 of OBRA 1993 increased the highest federal estate and gift tax rates to 53 % for transfers over $ 2.5 million but less than $ 3 million, and 55 % for transfers over $ 3 million, retroactively effective January 1, 1993. *See* 26 U.S.C. § 2001(c)(1) (West Supp.1998).

The Report of the House Budget Committee provided the following reasons for enacting Section 13208: "To raise revenue to address the Federal deficit, to improve tax equity, and to make the tax system more progressive, the committee believes that the top two estate and gift tax rates which expired at the end of 1992 should be reinstated." H.R.Rep. No. 103–111, at 644 (1993), *reprinted in* 1993 U.S.C.C.A.N. 378, 875. The House Conference Report made no allusion to the provision's retroactive application and provided no commentary justifying it. *See* H.R. Conf. Rep. No. 103–213, at 581 (1993), *reprinted in* 1993 U.S.C.C.A.N. 1088, 1270.

The Third Circuit has upheld Section 13208's retroactive application from due process and Takings Clause challenges. *See Kane v. United States,* 942 F.Supp. 233, 234–35 (E.D.Pa.1996), *aff'd,* 118 F.3d 1576 (3d Cir.1997). The District of Columbia Circuit was presented with a constitutional challenge to Section 13208 as a direct tax, but the court did not reach the merits of the claim. *See National Taxpayers,* 68 F.3d at 1430 (affirming dismissal for lack of federal subject matter jurisdiction).

The tax liabilities of both the Estate of Angele C. Quarty and Elizabeth B. Cherne ("Taxpayers") were increased as a result of the retroactive application of Section 13208's increase in estate and gift tax rates. Mrs. Quarty died on January 12, 1993; her taxable estate was greater than $3 million. At the time of her death, the maximum federal estate tax rate imposed on such estates was 50 %. As a result of Section 13208's retroactive application, Mrs. Quarty's estate was assessed $228,682.98 more in estate taxes than it would have been under a 50 % tax rate. Similarly, as a result Section 13208's retroactivity, Mrs. Cherne was required to pay $110,000 more in gift taxes on gifts she made on January 8, 1993 than she would have paid if the 1992 tax rates had not been reinstated.

Taxpayers filed individual claims for refunds with the Internal Revenue Service ("IRS") to recover the additional taxes that they were required to pay as a result of the retroactive tax rate increases provided by Section 13208. In their respective refund claims, Taxpayers asserted that Section 13208's retroactivity was unconstitutional on the grounds that it violated the Fifth Amendment's Due Process and Takings Clauses, and constituted a direct tax without apportionment.[1]

After their refund claims were denied, Taxpayers filed separate complaints in district court. In their complaints, Taxpayers

---

1. Taxpayers' refund claims did not assert violation of the Ex Post Facto Clause, art. I, § 9, cl. 3, as a ground for refund.

asserted the three constitutional challenges specified in their refund claims, plus a claim that Section 13208 violated the ex post facto prohibition in Article I, § 9, cl. 3. After the district court consolidated these cases, the government filed a motion to dismiss the complaints for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and Taxpayers filed a joint motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The district court granted the government's motion to dismiss, and denied Taxpayers' motion for summary judgment. The district court held that Taxpayers' four constitutional challenges raised in their complaints failed to state a claim. The district court did not address whether Taxpayers' failure to include the ex post facto claim in their refund claim filed with the IRS deprived it of jurisdiction over that claim. This appeal ensued.

## II.

Whether the district court properly granted the government's motion to dismiss Taxpayers' constitutional challenges to Section 13208 presents a question of law that we review de novo. *See Licari v. Commissioner,* 946 F.2d 690, 692 (9th Cir.1991) (constitutional challenge to retroactive tax legislation reviewed de novo); *see also Pack v. United States,* 992 F.2d 955, 957 (9th Cir.1993) (grant of dismissal for failure to state claim reviewed de novo).

## III.

### A.

The Supreme Court "repeatedly has upheld retroactive tax legislation against a due process challenge." *United States v. Carlton,* 512 U.S. 26, 30, 114 S.Ct. 2018, 129 L.Ed.2d 22 (1994) (citing *United States v. Hemme,* 476 U.S. 558, 106 S.Ct. 2071, 90 L.Ed.2d 538 (1986); *United States v. Darusmont,* 449 U.S. 292, 101 S.Ct. 549, 66 L.Ed.2d 513 (1981) (per curiam); *Welch v. Henry,* 305 U.S. 134, 59 S.Ct. 121, 83 L.Ed. 87 (1938); *United States v. Hudson,* 299 U.S. 498, 57 S.Ct. 309, 81 L.Ed. 370 (1937); *Milliken v. United States,* 283 U.S. 15, 51 S.Ct. 324, 75

L.Ed. 809 (1931); *Cooper v. United States,* 280 U.S. 409, 50 S.Ct. 164, 74 L.Ed. 516 (1930)). The Court has noted on numerous occasions that Congress " 'almost without exception' has given general revenue statutes effective dates prior to the dates of actual enactment." *Id.* at 32–33, 114 S.Ct. 2018; *see Pension Benefit Guar. Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 731, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984) (noting congressional practice); *Darusmont,* 449 U.S. at 296–97, 101 S.Ct. 549 (same). This " 'customary congressional practice' generally has been 'confined to short and limited periods required by the practicalities of producing national legislation,' " *Carlton,* 512 U.S. at 33, 114 S.Ct. 2018 (quoting *Darusmont,* 449 U.S. at 296–97, 101 S.Ct. 549), and the Court is "loathe to reject such a common practice when conducting the limited judicial review accorded economic legislation under the Fifth Amendment's Due Process Clause." *Gray,* 467 U.S. at 731, 104 S.Ct. 2709.

In *Carlton,* the Supreme Court left no doubt as to the deferential due process standard applicable to challenges to retroactive tax legislation. "The due process standard to be applied to tax statutes with retroactive effect ... is the same as that generally applicable to retroactive economic legislation." *Carlton,* 512 U.S. at 30, 114 S.Ct. 2018. That standard is whether retroactive application itself serves a legitimate purpose by rational means:

> Provided that the retroactive application of a statute is supported by a legitimate legislative purpose furthered by rational means, judgments about the wisdom of such legislation remain within the exclusive province of the legislative and executive branches....
>
> To be sure, ... retroactive legislation does have to meet a burden not faced by legislation that has only future effects.... "The retroactive aspects of legislation, as well as the prospective aspects, must meet the test of due process, and the justifications for the latter may not suffice for the former".... But that burden is met simply by showing that the retroactive application of the legislation is itself justified by a rational legislative purpose.

*Id.* at 30–31, 114 S.Ct. 2018 (quoting *Gray,* 467 U.S. at 729–30, 104 S.Ct. 2709 (quoting *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 16–17, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976))).

In *Carlton,* the Court applied this familiar standard to a statute that amended, and limited the availability of, an estate tax deduction that Congress had enacted fourteen months earlier; the amendment was made effective as of the original enactment date of the deduction. *See id.* at 29, 114 S.Ct. 2018. The estate tax provision, codified as 26 U.S.C. § 2057, granted a deduction for half of the proceeds of "any sale of employer securities by the executor of an estate" to "an employee stock ownership plan [ ("ESOP") ]." 26 U.S.C. § 2057(b);[2] *see Carlton,* 512 U.S. at 28, 114 S.Ct. 2018. To qualify for the deduction as the statute was originally enacted on October 22, 1986, the sale of securities to the ESOP had to be before the decedent's estate tax return was required to be filed, but there were no requirements on when the securities had to be acquired by the decedent or his estate. *See id.* at 28–29, 114 S.Ct. 2018.

Relying on § 2057 as enacted, executor Carlton used estate funds to purchase stock in MCI Communications Corporation, sold that stock two days later at a loss to the MCI ESOP, and claimed a deduction for half of the proceeds from the sale. *See id.* at 28, 114 S.Ct. 2018. The reduction in the estate tax as a result of this deduction easily off-set the estate's direct loss in selling the stock. *See id.* On December 22, 1987, Congress amended § 2057, requiring that to qualify for the deduction "the securities sold to an ESOP must have been 'directly owned' by the decedent 'immediately before death.' " *Id.* at 29, 114 S.Ct. 2018 (quoting Omnibus Budget Reconciliation Act of 1987, Pub.L. 100–203, § 10411(a), 101 Stat. 1330, 1330–432 (1987)). Congress made the 1987 amendment effective as of the date § 2057 was originally enacted in 1986. *See id.*

In rejecting executor Carlton's suggestion that the 1987 amendment's retroactive appli-

cation violated due process, the Court primarily relied on two considerations. First, the Court concluded that Congress's purpose in enacting the 1987 amendment was neither illegitimate nor arbitrary, noting that Congress acted "to correct what it reasonably viewed as a mistake in the original 1986 provision that would have created a significant and unanticipated revenue loss." *Id.* at 32, 114 S.Ct. 2018. Second, Congress acted promptly in making this correction and established "only a modest period of retroactivity." *Id.*

■ Before we consider whether the retroactive application of the tax rates in Section 12308 is rationally related to a legitimate legislative purpose, we first address Taxpayers' argument that this standard stated in *Carlton* does not govern the question of whether Section 13208's retroactivity comports with due process because its tax rate change is tantamount to the enactment of a "wholly new tax." This argument is an attempt to gain succor from whatever vitality remains in *Blodgett v. Holden,* 275 U.S. 142, 48 S.Ct. 105, 72 L.Ed. 206 (1927), and *Untermyer v. Anderson,* 276 U.S. 440, 48 S.Ct. 353, 72 L.Ed. 645 (1928). Both of these decisions considered the application of the first gift tax to gifts made before the statute was enacted, and both held that such retroactive application of the tax violated due process. *See id.,* at 445–46, 48 S.Ct. 353; *Blodgett,* 275 U.S. at 147, 48 S.Ct. 105. In *Carlton,* the Supreme Court commented on these decisions (and on *Nichols v. Coolidge,* 274 U.S. 531, 47 S.Ct. 710, 71 L.Ed. 1184 (1927)):

Those cases were decided during an era characterized by exacting review of economic legislation under an approach that 'has long since been discarded.' *Ferguson v. Skrupa,* 372 U.S. 726, 730, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963). To the extent that their authority survives, they do not control here. *Blodgett* and *Untermyer,* which involved the Nation's first gift tax, essentially have been limited to situations involving 'the creation of a wholly new tax,' and their 'authority is of limited value in

---

**2.** The Omnibus Budget Reconciliation Act of 1989, Pub.L. 101–239, § 7304(a), 103 Stat. 2106, 2352 (1989), repealed § 2057 for estates of dece-

dents who died after December 19, 1989. *See Carlton,* 512 U.S. at 28 n. 1, 114 S.Ct. 2018.

assessing the constitutionality of subsequent amendments that bring about certain changes in the operation of the tax laws.' *United States v. Hemme*, 476 U.S. [558, 568, 106 S.Ct. 2071, 90 L.Ed.2d 538 (1986)]. *Carlton*, 512 U.S. at 34, 114 S.Ct. 2018. In this area, a new tax is imposed only when the taxpayer has " 'no reason to suppose that any transactions of the sort will be taxed at all.' " *Darusmont*, 449 U.S. at 298, 300, 101 S.Ct. 549 (quoting *Cohan v. Commissioner*, 39 F.2d 540, 545 (2d Cir.1930) (Learned Hand, J.)). Thus, a change in the tax rate, such as the change that Section 13208 effects, is an amendment to an existing tax, not the imposition of a wholly new tax. *See id.; Estate of Ekins v. Commissioner*, 797 F.2d 481, 484 (7th Cir.1986) (change in tax rate distinguished from wholly new tax). We therefore reject Taxpayers' suggestion that the change in tax rates in Section 13208 is tantamount to the imposition of a wholly new tax, and turn to the rationality review of this Section's retroactivity.

■ The government asserts that the legitimate purposes of the retroactive application of Section 13208's tax rates are, as the House Report states, "[t]o raise revenue, to address the Federal deficit, to improve tax equity, and to make the system more progressive." H.R.Rep. No. 103–111, at 644, *reprinted in* 1993 U.S.C.C.A.N. at 875. The government further suggests that the eight-month period of retroactivity, making the rates applicable to the entire calendar year, is less extensive than other retroactivity periods upheld by the courts, and rationally related to its stated purposes. We agree.

There can be no dispute that the purpose of raising government revenue is a legitimate legislative purpose. *See* U.S. Const. art. I, § 8 & amend. XVI; *Carlton*, 512 U.S. at 32, 114 S.Ct. 2018; *id.* at 37, 114 S.Ct. 2018 (O'Connor, J., concurring) ("Retroactive application of revenue measures is rationally related to the legitimate governmental purpose of raising revenue."). Likewise, tax progressivity (and accordingly tax equity) are also legitimate legislative purposes. *See Knowlton v. Moore*, 178 U.S. 41, 109, 20 S.Ct. 747, 44 L.Ed. 969 (1900) (upholding progressive estate tax from constitutional challenge); *see also* Joseph Bankman & Thomas Griffin, *Social Welfare and the Rate Structure: A New Look at Progressive Taxation*, 75 Cal. L.Rev.1905, 1906 (1987) (noting that progressivity has been part of federal income tax system since its inception). The decision to impose the increases in the estate and gift tax rates for a retroactive period of eight months was a rational means to raise revenue. In addition, this decision promotes tax equity and progressivity by establishing continuity in the application of the progressive taxes contained in Section 13208. Moreover, retroactive application of an income tax statute to the entire calendar year in which it was enacted, and retroactive application periods longer than eight months, routinely have been upheld from constitutional challenge. *See, e.g., Carlton*, 512 U.S. at 32–33, 114 S.Ct. 2018 (upholding 14 month retroactive application as modest); *Darusmont*, 449 U.S. at 294–95, 101 S.Ct. 549 (upholding retroactive application within calendar year of 10 months); *Milliken*, 283 U.S. at 18–19, 51 S.Ct. 324 (upholding application of "gift in contemplation of death" tax statute, enacted in 1918, to gift made in 1916 and the donor died in 1920); *Licari*, 946 F.2d at 694–95 (upholding application of tax penalty passed in 1986 to returns filed in 1982–84).

Taxpayers and their amici attempt to resist the conclusion that Section 13208's retroactive application is a rational means to legitimate purposes through two different arguments: first, that Section 13208's retroactivity is not "curative" of a congressional "mistake" as the Supreme Court characterized the retroactive amendment in *Carlton*, 512 U.S. at 31–32, 114 S.Ct. 2018; and second, that Section 13208's retroactivity is not a rational means to raising revenue because upholding it creates a host of undesirable consequences for recipients of gifts and bequests as well as for estate planning.[3]

---

**3.** The argument that Taxpayers did not have adequate notice of the retroactive application of Section 13208's tax rates, a concern relevant to their due process challenge, is addressed in the discussion regarding whether Section 13208 imposes a direct tax. *See infra* § III, C.

Taxpayers and amici are correct that the tax rates imposed retroactively by Section 13208 are not "curative" of a congressional "mistake" in the same way that the retroactive amendment upheld in *Carlton* was. The retroactive amendment upheld in *Carlton* prevented the deduction that Congress enacted to encourage employee ownership of stock in their companies from being obtained by any executor using estate funds to purchase and resell such stock to the decedent's employee stock ownership plan. *See id.* at 31–32, 114 S.Ct. 2018. Section 13208 is not "curative" in this sense of correcting an unintended consequence of already enacted legislation. Taxpayers and amici are wrong, however, that this distinction makes any difference to Taxpayers' due process claim. The fact that the *Carlton* Court noted that the retroactive amendment before it was "curative" of a legislative mistake does not make being "curative" in that sense a requirement for the rationality of retroactive tax changes under the Due Process Clause. *See Darusmont,* 449 U.S. at 301, 101 S.Ct. 549 (upholding retroactive increase in rate of minimum tax); *Welch v. Henry,* 305 U.S. 134, 150–51, 59 S.Ct. 121, 83 L.Ed. 87 (1938) (upholding Wisconsin law providing for retroactive application of graduated tax on dividends); *Milliken,* 283 U.S. at 23–24, 51 S.Ct. 324 (upholding retroactive application of increase in rate of estate tax). Section 13208 is not irrational under the due process analysis merely because it is not "curative" in the *Carlton* sense.

Taxpayers' and amici's arguments based on Section 13208's alleged consequences are also unavailing. They fear that upholding Section 13208 will mean that "no executor can ever finally determine the amount of tax for which the estate is liable," (*see* Taxpayers' Opening Br. at 37), and that no estate can ever be "fully administered and closed," (*id.* at 39), thereby undermining state policies favoring expeditious administration of decedents' estates, (*id.* at 39). They also suggest that upholding Section 13208's retroactive application is inconsistent with the rule of law.

Because Section 13208 imposes only an eight-month period of retroactivity, upholding it does not present the specter of making an estate (its executor and beneficiaries) forever subject to the possibility of additional tax liability. It fits squarely within the judicial deference to periods of retroactivity in tax legislation "confined to short and limited periods." *Carlton,* 512 U.S. at 33, 114 S.Ct. 2018 (quoting *Darusmont,* 449 U.S. at 296–97, 101 S.Ct. 549). For the same reason, upholding the retroactive application of the tax rates in Section 13208 neither renders estate planning impossible nor eviscerates state policy favoring expeditious administration of estates. Further, even if upholding Section 13208's retroactivity disrupts some expectations in estate planning and distribution, the Supreme Court has reiterated, "our cases are clear that legislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations." *Gray,* 467 U.S. at 729, 104 S.Ct. 2709 (quoting *Turner Elkhorn Mining Co.,* 428 U.S. at 16, 96 S.Ct. 2882); *see Carlton,* 512 U.S. at 33, 114 S.Ct. 2018 ("Although Carlton's reliance is uncontested . . . his reliance alone is insufficient to establish a constitutional violation."). Moreover, as the Court in *Carlton* noted in a remark that has particular relevance to estate planning, "[a]n entirely prospective change in the law may disturb the relied-upon expectations of individuals, but such a change would not be deemed therefore to be violative of due process." *Id.* at 33–34, 114 S.Ct. 2018. As for the contention that the retroactivity in the statute before us is inconsistent with the rule of law, we acknowledge that "[r]etroactivity is generally disfavored in the law." *Eastern Enters. v. Apfel,* 524 U.S. 498, 118 S.Ct. 2131, 2151, 141 L.Ed.2d 451 (1998). But our inquiry here is only the narrow one of determining whether the legislation's retroactive application is a rational means to a legitimate legislative purpose. Because we conclude that the application of the tax rates set by Section 13208 to the eight-month period preceding its enactment meets those requirements, we hold that Section 13208's retroactive application does not offend due process.

## B.

Taxpayers claim that the application of the tax rates set by Section 13208 to the eight-month period before its enactment consti-

tutes a taking of property without just compensation under the Fifth Amendment's Takings Clause. See U.S. Const. amend V ("[N]or shall private property be taken for public use, without just compensation.").

■ It is well established that Congress's general exercise of its taxing power does not violate the Fifth Amendment's prohibition on takings without just compensation. See *Brushaber v. Union Pac. R.R. Co.,* 240 U.S. 1, 24–25, 36 S.Ct. 236, 60 L.Ed. 493 (1916); *Coleman v. Commissioner,* 791 F.2d 68, 70 (7th Cir.1986). Levying of taxes does not constitute a Fifth Amendment taking unless the taxation is so "arbitrary as to constrain to the conclusion that it was not the exertion of taxation, but a confiscation of property...." *Brushaber,* 240 U.S. at 24, 36 S.Ct. 236; *see also 287 Corp. Ctr. Assocs. v. Bridgewater,* 101 F.3d 320, 324 n. 5 (3d Cir. 1996) (quoting same); *Acker v. Commissioner,* 258 F.2d 568, 574–75 (6th Cir.1958), *aff'd on other grounds sub. nom. Commissioner v. Acker,* 361 U.S. 87, 80 S.Ct. 144, 4 L.Ed.2d 127 (1959) (rejecting, under *Brushaber,* taxpayers' argument that tax effected taking). In view of the conclusion above that Section 13208's retroactive application does not violate due process, " 'it would be surprising indeed to discover' the challenged statute nonetheless violat[ed] the Takings Clause." *Concrete Pipe & Prods. of Cal., Inc. v. Construction Laborers Pension Trust for S. Cal.,* 508 U.S. 602, 641, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993) (quoting *Connolly v. Pension Benefit Guar. Corp.,* 475 U.S. 211, 223, 106 S.Ct. 1018, 89 L.Ed.2d 166 (1986)).

The Supreme Court has "eschewed the development of any set formula for identifying a 'taking' forbidden by the Fifth Amendment, and [has] relied instead on ad hoc, factual inquiries into the circumstances of each particular case." *Connolly,* 475 U.S. at 224, 106 S.Ct. 1018. In making this assessment, the Court has identified three factors of "particular significance": "(1) 'the economic impact of the regulation on the claimant'; (2) 'the extent to which the regulation has interfered with distinct investment-backed expectations'; and (3) 'the character of the governmental action.' " *Id.* at 225, 106 S.Ct. 1018 (quoting *Penn Cent. Transp. Co. v. New York City,* 438 U.S. 104, 124, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978)). These factors were applied to retroactive legislation last term in Justice O'Connor's plurality opinion in *Eastern Enterprises.,* 118 S.Ct. at 2153.[4] Justice O'Connor reasoned that the retroactive liability imposed by the Coal Industry Retiree Health Benefit Act of 1992 ("Coal Act") imposed on a few employers was so severe at to constitute a taking. *See id.* at 2151–53.

■ Even under the reasoning of the takings analysis of the *Eastern Enterprises* plurality opinion, it is clear that Section 13208's retroactivity does not effect a taking. First, as noted above, Section 13208 imposes a short period of retroactivity and restores the previously existing tax rates. Thus, in terms of the impact on the instant Taxpayers, its retroactive application imposes neither "severe retroactive liability," nor liability "substantially disproportionate with the parties' experience." *Id.* at 2149; *cf. id.* at 2151 (Coal Act effecting unconstitutional taking reached back 30 to 50 years in imposing liability based on activities in 1946 and 1965). Second, because the tax rates in Section 13208 are the same as those existing prior to January 1993, and in 1992 Congress had passed a bill to retain those rates, any disruption of their expectations does not provide a strong argument for finding a taking. Further, Taxpayers' expectations in the rate of taxation have been given little weight: "Nobody has a vested right in the rate of taxation, which may be retroactively changed at the will of Congress at least for periods of less than twelve months." *Darusmont,* 449 U.S. at 298, 101 S.Ct. 549 (quoting *Cohan,* 39 F.2d at 545). Finally, the retroactive application of tax legislation is "a customary congressional practice," *id.* at 297, 101 S.Ct. 549, and does not single out any particular persons to bear this tax burden. *Cf. Eastern Enters.,* 118 S.Ct. at 2153 (Act singles out certain employers to bear burden). Accordingly, we reject Taxpayer's claim that the

---

4. Justice Kennedy joined in the judgment that provisions of the Coal Act exceeded the legitimate authority of government, but did not agree that those provisions constituted a taking. *See id.* 118 S.Ct. at 2154 (Kennedy, J., concurring in the judgment)

retroactive application of the tax rates in Section 13208 is so arbitrary as to constitute a taking.

### C.

Taxpayers claim that Section 13208's retroactive tax rate increases impose a direct tax upon property in violation of the constitutional requirement that direct taxes be apportioned on the basis of the population of the states. *See* U.S. Const. art. I, § 2, cl. 3 ("Representatives and direct Taxes shall be apportioned among the several States which may be included within this Union, according to their respective Numbers . . . ."); *id.* art. I, § 9, cl. 4 ("No Capitation, or other direct, Tax shall be laid, unless in Proportion to the Census or Enumeration herein before directed to be taken."). In contrast to an excise or indirect tax, "which is levied upon the use or transfer of property even though it might be measured by the property's value," *United States v. Wells Fargo Bank,* 485 U.S. 351, 355, 108 S.Ct. 1179, 99 L.Ed.2d 368 (1988), a direct tax is "levied upon the property itself." *Id.; see also United States v. Manufacturers Nat'l Bank of Detroit,* 363 U.S. 194, 197–98, 80 S.Ct. 1103, 4 L.Ed.2d 1158 (1960) (A direct tax is "not a tax upon a transfer or other taxable event but is, instead, a tax upon property."); *Bromley v. McCaughn,* 280 U.S. 124, 136, 50 S.Ct. 46, 74 L.Ed. 226 (1929) ("While taxes levied upon or collected from persons because of their general ownership of property may be taken to be direct, . . . a tax imposed upon a particular use of property or the exercise of a single power over property incident to ownership, is an excise which need not be apportioned . . . .") (citations omitted).

Taxpayers do not challenge the established law that the federal estate and gift taxes are indirect taxes, imposed upon the transfer of property. *See Wells Fargo Bank,* 485 U.S. at 355, 108 S.Ct. 1179 ("The estate tax is a form of excise tax."); *Knowlton,* 178 U.S. at 83, 20 S.Ct. 747 (holding that estate tax is not a direct tax because death is the generating event); *Tyler v. United States,* 281 U.S. 497, 504, 50 S.Ct. 356, 74 L.Ed. 991 (1930) (holding that imposition of estate tax on property jointly held by husband and wife was not a

direct tax because husband's death had effect of passing to surviving spouse substantial rights in relation to the property); *Bromley,* 280 U.S. at 135–38, 50 S.Ct. 46 (holding that federal gift tax is not a direct tax, but rather an excise, which need not be apportioned, because it is imposed upon a use of property incident to ownership). Taxpayers instead argue that the portion of the taxes collected from them pursuant to the increased rates made retroactively applicable in Section 13208 are direct taxes. The basic contention underlying Taxpayers' view is that any taxes collected pursuant to the portion of a tax rate not in existence at the time of an event or exchange cannot be imposed upon the happening of the event or exchange, but rather must be a tax upon the property itself.

The Supreme Court rejected a similar argument in *Milliken,* 283 U.S. at 15, 51 S.Ct. 324. The taxpayer in *Milliken* gave his children some corporate stock in 1916; in 1918, Congress enacted a Revenue Act that imposed higher rates than embodied in the 1916 Revenue Act for gifts made in contemplation of death. *See id.* at 18–19. When the taxpayer died in 1920, the IRS included the shares of stock given in 1916 to the taxpayer's children in the decedent's estate as gifts made in contemplation of death, and taxed them at the rates in the 1918 Revenue Act. *See id.* The executor argued that this taxation violated due process and imposed a direct tax because it was retroactive in the sense that it measured the tax by rates not in force when the gift was made, but at the time of the death of the donor. *See id.* at 20, 51 S.Ct. 324.

The Court swiftly rejected the suggestion that application of the 1918 rates rendered the tax "invalid as an unapportioned direct tax." *Id.* at 24, 51 S.Ct. 324. "The present gift was subject to excise when made;" and, the Court concluded, "for reasons already indicated, we think a mere increase in the tax, pursuant to a policy of which the donor was forewarned at the time he elected to exercise the privilege, did not change its character." *Id.* at 24, 51 S.Ct. 324. Prior to this comment, in rejecting the executor's due process challenge, the Court had reasoned that, in view of the tax policy existing in 1916

of treating gifts in contemplation of death in the same way as testamentary disposals, the taxpayer was "well warned" that such gifts would be taxed at the same rate of estate taxes applicable at the taxpayer's death. *Id.* at 24, 51 S.Ct. 324. Thus, in *Milliken,* the Court found no merit in the suggestion, similar to the one Taxpayers urge here, that the retroactive imposition of a higher tax rate converts the tax collected into a direct tax.

Likewise, in *First Nat'l Bank in Dallas v. United States,* 190 Ct.Cl. 400, 420 F.2d 725, 732 (1970), the Court of Claims held that the retroactive application of the Interest Equalization Tax Act of 1964 ("I.E.T.") to the date of President Kennedy's announcement that he intended to propose the tax to Congress, did not violate due process or constitute a direct tax. The I.E.T. levied a tax on purchases of foreign securities by United States persons from foreign persons. *See id.* at 726. In concluding that the taxpayers had failed to meet their burden in establishing that the retroactive application of the tax was a direct tax, the court commented: "Nor do we see how the mere retroactive application of a tax, conceded to be an excise imposed upon the exercise of a privilege, can convert such tax to a direct levy on property." *Id.* at 732.

▮ We share these views with regard to taxes collected pursuant to Section 13208. Section 13208 does not impose a new tax in the sense of taxing transfers of property not previously subject to tax, but merely increases the tax rate of an existing tax. It is the taxable transfer that occasions the federal estate and gift taxes, and the change in the tax rate applicable to those transfers, even when imposed retroactively, does not alter the fact that there would be no federal estate or gift tax imposed on the property but for the taxable transfer. The portion of taxes collected pursuant to the increased rates in Section 13208 are thus not taxes upon the property itself.[5]

We are also not persuaded by Taxpayers' attempts to distinguish the holdings of *Mil-*

liken* and *First Nat'l.* Taxpayers argue that they did not have the same notice of the prospect of retroactive application of the tax as the taxpayers did in *Milliken* and *First Nat'l.* But the extent of a taxpayer's notice of a change in the tax law has no bearing on whether the tax levied is upon a transfer of property or upon the property itself. Moreover, in assessing due process challenges to retroactive tax legislation, where notice considerations may have some constitutional relevance, the Supreme Court has affirmed the view that lack of notice is not dispositive:

> In *Welch v. Henry,* the Court upheld the retroactive imposition of a tax despite the absence of advanced notice of the legislation. And in *Milliken v. United States,* the Court rejected a similar notice argument, declaring that a taxpayer 'should be regarded as taking his chances of any increase in the tax burden which might result from carrying out the established policy of taxation.'

*See Carlton,* 512 U.S. at 34, 114 S.Ct. 2018 (quoting *Milliken,* 283 U.S. at 23, 51 S.Ct. 324). Notice considerations, therefore, neither suggest any reason to amend our due process holding nor alter the relevance of *Milliken* and *First Nat'l*'s rejection of the argument that the retroactive application of an indirect tax converts the tax into a direct one. We accordingly hold that the retroactive application of the tax rates in Section 13208 does not convert any portion of the federal estate and gift taxes collected from Taxpayers into a direct tax requiring apportionment.

### D.

Taxpayers and their amici contend that Section 13208's retroactive application violates the prohibition on Congress enacting ex post facto laws. *See* U.S. Const. art. I, § 9, cl. 3 ("No Bill of Attainder or ex post facto Law shall be passed."). The district court rejected this claim on the merits, but we do not reach the merits of this claim because it was not administratively exhausted.

---

5. Although the *National Taxpayers* court did not reach the merits of whether Section 13208's retroactive application imposed a direct tax, the court did state its view that Section 13208's retroactive application was constitutional. *See*

68 F.3d at 1438 (noting that there is "persuasive precedent indicating that increases in federal estate and gift taxes have been found constitutional, even when applied retroactively," citing *Milliken* and *First Nat'l*).

■ The United States, as a sovereign, "'is immune from suit, save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *United States v. Dalm,* 494 U.S. 596, 608, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990) (quoting *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976) (quoting *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941))). "[A] waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." *Lane v. Pena,* 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996); *see WWSM Investors v. United States,* 64 F.3d 456, 458 (9th Cir.1995) (noting that conditions attached to legislation waiving sovereign immunity must be strictly observed).

■ The Internal Revenue Code provides that no suit for a refund may be maintained in any court until a claim for a refund has been filed with the Secretary of the Treasury in accordance with Treasury Regulations:

No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

26 U.S.C. § 7422(a). The regulations promulgated under this statute require the taxpayer to specify each ground for which a refund is claimed:

No refund or credit will be allowed after the expiration of the statutory period of limitation applicable to the filing of a claim therefor except upon one or more of the grounds set forth in a claim filed before the expiration of such period. The claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof. The statement of the grounds and facts must be verified by a written declaration that it is made under the penalties of perjury. A claim which does not comply with this paragraph will not be considered for any purpose as a claim for refund or credit.

26 C.F.R. § 301.6402–2(b)(1). These requirements ensure that the IRS is given adequate notice of each claim and its underlying facts, so that the IRS may conduct an administrative investigation and determination. *See Boyd v. United States,* 762 F.2d 1369, 1371 (9th Cir.1985). They also allow the IRS to correct any errors that may have been made and limit the scope of refund litigation to issues the IRS has examined and is willing to defend. *See Hefti v. Internal Revenue Serv.,* 8 F.3d 1169, 1173 (7th Cir. 1993). Compliance with these specificity requirements is a prerequisite to subject matter jurisdiction over a claim for a refund. *See Boyd,* 762 F.2d at 1371; *Bear Valley Mut. Water Co. v. Riddell,* 493 F.2d 948, 950–51 (9th Cir.1974); *see also Commissioner v. Lundy,* 516 U.S. 235, 240, 244, 252, 116 S.Ct. 647, 133 L.Ed.2d 611 (1996) (noting that under 26 C.F.R. § 301.6402–2(b)(1) claim for refund in district court must state ground for refund with specificity).

■ "[I]n the absence of a waiver by the government, the taxpayer cannot recover in its suit for refund on a different ground than set forth in the claim for refund." *Bear Valley,* 493 F.2d at 951. Taxpayers' refund claims did not allege that Section 13208's retroactive application was unconstitutional on the ground that it violated the prohibition on Congress passing ex post facto laws.[6] "If the [refund] claim on its face does not call for investigation of a question, the taxpayer may not later raise that question in a refund suit." *Boyd,* 762 F.2d at 1372; *see Pack,* 992 F.2d at 958 (quoting and applying same). Thus, absent waiver of the exhaustion requirement

---

6. Because the parties did not include the Taxpayers' refund claim submitted to the IRS in the record, we rely on the fact that the Taxpayers do not specifically dispute the government's assertion that they did not mention their ex post facto challenge in their refund claim. (*See* Gov't Brief at 41; Taxpayers' Reply Brief at 11.)

by the government, Taxpayers may not raise their ex post facto claim in their refund suit in district court.

 The government may waive compliance with the specificity requirements of Treasury Regulation § 301.6402–2(b)(1) if it has investigated the merits of a claim and taken action upon it. *See Angelus Milling Co. v. Commissioner,* 325 U.S. 293, 297, 65 S.Ct. 1162, 89 L.Ed. 1619 (1945); *Martinez v. United States,* 595 F.2d 1147, 1148 (9th Cir. 1979); *Bear Valley,* 493 F.2d at 952. To establish that the government has waived compliance with the regulations' specificity requirement, "[t]he showing should be unmistakable that the Commissioner has in fact seen fit to dispense with his formal requirements and to examine the merits of the claim. It is not enough that in some roundabout way the facts supporting the claim may have reached him." *Angelus Milling,* 325 U.S. at 297, 65 S.Ct. 1162; *see Bear Valley,* 493 F.2d at 952. There is no evidence here that the government examined Taxpayers' claim that Section 13208's retroactive application violates the Ex Post Facto Clause; thus, Taxpayers have not made the requisite showing that the government has waived compliance with the regulations. *See Angelus Milling,* 325 U.S. at 298, 65 S.Ct. 1162 (imposing burden on taxpayer to show that Commissioner had waived compliance with the specificity requirements of the regulations).[7]

 Nor would possible futility of Taxpayers presenting their ex post facto claim to the IRS excuse Taxpayers from stating this ground for relief in their refund claim:

> An anticipated rejection of the claim, which the statute contemplates, is not a ground for suspending its operation. Even though formal, the condition upon which the consent to suit is given is defined by the words of the statute, and 'they mark the conditions of the claimant's right.' *Rock*

Island R.R. Co. v. United States, 254 U.S. 141, 143, 41 S.Ct. 55, 65 L.Ed. 188 [ (1920) ]. Compliance may be dispensed with by waiver, as an administrative act, *Tucker v. Alexander, supra* [275 U.S. 228, 48 S.Ct. 45, 72 L.Ed. 253 (1927) ]; but it is not within the judicial province to read out of the statute the requirement of its words, *Rand v. United States,* 249 U.S. 503, 510, 39 S.Ct. 359, 63 L.Ed. 731 [(1918)].

*United States v. Felt & Tarrant Mfg. Co.,* 283 U.S. 269, 273, 51 S.Ct. 376, 75 L.Ed. 1025 (1931). We thus conclude that Taxpayers' claim that Section 13208's retroactive application violates the prohibition against ex post facto laws contained in Article I, § 9, cl. 3 of the Constitution was not properly before the district court. The district court lacked subject matter jurisdiction to entertain that claim on the merits.

### IV.

Section 13208's retroactive application to the eight-month period within the calendar year fits comfortably within the customary congressional practice of setting the effective dates of revenue acts prior to the dates of enactment, a practice that the Supreme Court routinely has found does not offend the Constitution. We hold that the retroactive application to Taxpayers of the tax rates set by Section 13208 neither violates due process, nor constitutes a taking, nor a direct tax requiring apportionment. In addition, we hold that the district court lacked subject matter jurisdiction over Taxpayers' ex post facto challenge to Section 13208.

Accordingly, the judgment of the district court dismissing this action is

**AFFIRMED.**

---

7. We find Taxpayers' argument that the government waived its exhaustion argument by failing to present it to the district court wholly lacking in merit. In the government's papers supporting its motion to dismiss, the government specifically noted that Taxpayers' refund claims did not include their claims based on the prohibition on Congress enacting ex post facto laws and argued that accordingly the district court lacked subject

matter over that claim. (*See* Corr. Mem. in Support of United States' Mtn. to Dismiss (CR 12) at 3 n.1, 10 n.4.) In addition, Taxpayers' compliance with Treasury Regulation § 301.6402–2(b)(1) is required for federal subject matter jurisdiction, and the "[a]bsence of subject matter jurisdiction of a federal court cannot be waived and may be raised at any time." *Dyer v. Greif Bros., Inc.,* 766 F.2d 398, 401 (9th Cir.1985).