Charles E. TRANTINA and Linda Trantina, Husband and Wife, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. CIV 03–2579–PHX–SRB.

United States District Court, D. Arizona.

May 17, 2005.

---

**54.** *See CHI of Alaska, Inc.,* 844 P.2d at 1115–16.

**55.** A.S. § 09.17.020(b).

Christopher Lee Raddatz, Robert P. Solliday, Thomas M. Quigley, Mohr Hackett Pederson Blakley & Randolph PC, Phoenix, AZ, for Plaintiffs.

John B. Snyder, III, U.S. Dept. of Justice, Washington, DC, Paul Kipp Charlton,

U.S. Attorney's Office, Phoenix, AZ, for Defendant.

## ORDER

BOLTON, District Judge.

This matter arises out of Plaintiffs Charles and Linda Trantina's alleged overpayment of income taxes and the Internal Revenue Service (IRS) Commissioner's denial of their claim for a refund. The Court now rules on Plaintiffs' pending Motion for Summary Judgment (Doc. 17) and Defendant's Cross–Motion for Summary Judgment (Doc. 19).

## I. BACKGROUND

Plaintiff Charles Trantina was employed as an independent insurance agent of State Farm Life Insurance Companies ("State Farm"), first in his individual capacity and later on behalf of the Trantina Insurance Agency, Inc. (the "Corporation"), an Arizona corporation formed in 1978. Following incorporation, State Farm executed a Corporation Agent Agreement ("Corporate Agreement") with the Corporation, which replaced Trantina's previous Individual Agent Agreement ("Individual Agreement"). Trantina was at all times the sole shareholder in the Corporation; he held 1100 shares of capital stock obtained in exchange for cash and other property paid to the Corporation.

In 1996, Trantina wished to retire and the Corporation advised State Farm of the termination of the Corporate Agreement as of June 30, 1996. Pursuant to the Corporate Agreement, the Corporation became entitled to termination payments after fulfilling certain requirements such as the return of State Farm's property within ten days. State Farm commenced making such payments to the Corporation in July 1996.

In March 1997, the Corporation formally adopted a plan of complete liquidation. Trantina exchanged his stock for all of the assets then-owned by the Corporation, including the right to collect termination payments under the Corporate Agreement. The Corporation's liquidation concluded on March 13, 1997 and in September 1997 State Farm commenced making termination payments to Trantina rather than to the Corporation.

On Plaintiffs' 1997, 1998, and 1999 income tax returns, as reflected by the IRS Form 1040 filed for each calendar year, Plaintiffs reported the termination payments received from State Farm as ordinary income and fully paid all tax thereon. Plaintiffs subsequently amended their 1997 and 1998 returns by completing IRS Form 1040X for each year, reporting the termination payments as long-term capital gains rather than ordinary income. The IRS accepted the 1997 and 1998 amendments and refunded the difference in taxes between ordinary income and long-term capital gains.

On April 10, 2003, Plaintiffs filed Form 1040X for the 1999 calendar year (the "Amended 1999 Return"), again amending their return to report the termination payments as long-term capital gains rather than ordinary income. As stated on the Amended 1999 Return, "the Return is amended to reflect the reclassification of payments from State Farm Insurance Companies on the sale of the taxpayer's agency back to the company. Payments are now reported as capital gain rather than ordinary income. Form 8594 is attached." (Snyder Decl., Ex. A, Form 8594.) The difference in tax liability amounted to $15,982, plus interest. On June 30, 2003, the IRS denied Plaintiffs' claim for a refund.

Plaintiffs thereafter filed suit in this Court on December 24, 2003, seeking a refund of $15,982 plus interest in taxes allegedly overpaid for the 1999 calendar year. Plaintiffs moved for summary judg-

ment on October 22, 2004 (Doc. 17) and Defendant cross-moved on November 2, 2004 (Doc. 19).

## II. LEGAL STANDARDS AND ANALYSIS

### A. Subject Matter Jurisdiction

 Defendant challenges this Court's jurisdiction to hear the instant action on the grounds now argued by Plaintiffs, contending that Plaintiffs' current arguments in favor of their right to a refund differ from those made to the IRS on Plaintiffs' Amended 1999 Return, their administrative claim for refund. The law makes clear that filing with the IRS a claim or demand for a refund is a prerequisite to filing suit for such a refund. 26 U.S.C. § 7422(a); 26 C.F.R. § 301.6402–2; *Real Estate–Land Title & Trust Co. v. United States*, 309 U.S. 13, 18, 60 S.Ct. 371, 373, 84 L.Ed. 542 (1940); *United States v. Felt & Tarrant Mfg. Co.*, 283 U.S. 269, 272, 51 S.Ct. 376, 377, 75 L.Ed. 1025 (1931). A claim "must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof." 26 C.F.R. § 301.6402–2(b). Because this prerequisite is jurisdictional, failure to file a claim for a refund which specifies "all grounds and supporting facts upon which a claim for refund is based" deprives the Court of jurisdiction over any claims not pursued before the IRS. *Quarty v. United States*, 170 F.3d 961, 972 (9th Cir.1999) ("Compliance with these specificity requirements is a prerequisite to subject matter jurisdiction over a claim for a refund."); *Martinez v. United States*, 595 F.2d 1147, 1148 (9th Cir.1979); *Estate of Bird v. United States*, 534 F.2d 1214, 1219 (6th Cir.1976) (finding that a court is without jurisdiction to consider claims not specifically set forth in the claim for refund); *Alabama By–Products Corp. v. Patterson*, 258 F.2d 892, 900 (5th Cir.1958) ("All

grounds upon which a taxpayer relies must be stated in the original claim for refund so as to apprise the Commissioner of what to look into; the Commissioner can take the claim at its face value and examine only those points to which his attention is necessarily directed. Anything not raised at that time cannot be raised later in a suit for refund.") (citations omitted). Whether or not this Court possesses subject matter jurisdiction under the doctrine of variance, then, depends on whether or not the arguments made here were also made in the claim for refund filed with the IRS Commissioner.

There is no dispute between the parties that Plaintiffs allege they are entitled to a refund of taxes because the income in question should be classified as long-term capital gains under 26 U.S.C. § 1222(3) ("Section 1222(3)") as income resulting from the sale or exchange of a capital asset held for more than one year. It is also undisputed that Plaintiffs *now* contend that the liquidation of the Corporation and the attendant exchange of Trantina's stock for the Corporation's assets, including the right to receive termination payments from State Farm, satisfies the criteria of Section 1222(3). While Plaintiffs ardently maintain that this factual basis for the Section 1222(3) classification was presented to and rejected by the Commission through the Amended 1999 Return, Defendant asserts that the only factual basis for a Section 1222(3) sale or exchange presented in the Amended 1999 Return consists of the exchange triggered by the termination of the Corporate Agreement, when the Corporation signed a covenant not to compete and surrendered the agency to State Farm in accord with the terms of the Corporate Agreement.

The Amended 1999 Return itself must determine which party has the better part of the argument. At the bottom of page

two of the Amended 1999 Return, Plaintiffs explain that they wish to reclassify payments received from State Farm Insurance Companies following the "sale" of Trantina's agency back to State Farm. On Form 8594, the Asset Acquisition Statement attached to the Amended 1999 Return, Plaintiffs stated that "[t]he sale is provided for in the agent's agreement combined with the schedule of payments." Also, on Line 6 of Form 8594, Plaintiffs indicated that "State Farm purchased a covenant not to compete as part of the agreement" in exchange for the assets (termination payments). These statements make clear that Plaintiffs were claiming entitlement to reclassification of the termination payments as long-term capital gains on the basis of the alleged sale of Trantina's agency back to State Farm. No other factual basis for reclassification, such as the liquidation of the Corporation's assets, was ever provided to the IRS via the claim for refund.

 The Court finds that the information provided on the Amended 1999 Return was legally insufficient to inform the IRS Commissioner that the refund was sought not only on the basis of the termination of the Corporate Agreement, but also on the basis of Trantina's exchange of his stock for the Corporation's assets during the Corporation's liquidation. The termination of the Corporate Agreement and the liquidation of the Corporation are two distinct transactions occurring more than eight months apart. The parties to the two transactions differed.[1] Nothing in Plaintiffs' refund claim notified the IRS of the need to investigate the Corporation's liquidation as a sale or exchange within the meaning of Section 1222(3). *See Boyd v.*

*United States,* 762 F.2d 1369, 1372 (9th Cir.1985) (claiming one type of loss as an expense did not direct the IRS to other costs or losses for investigatory purposes). Merely apprising the Commissioner of their argument that the termination payments constituted long-term capital gains is insufficient where the factual basis for such an argument is not specified at all, or where the factual basis specified is different from the one later pursued in court. *Nemours Corp. v. United States,* 188 F.2d 745, 750 (3d Cir.1951) ("It is to be noted that both the grounds for recovery and the facts supporting them must be shown."); *see also* 26 C.F.R. § 301.6402–2(b) (stating that a claim "must set forth in detail . . . facts sufficient to apprise the Commissioner of the exact basis" for the claim). The IRS had no opportunity to investigate and determine whether the Corporation's liquidation provided an adequate factual basis for treatment of the payments as long-term capital gains. *See First Nat'l Bank of Fayetteville, Ark., v. United States,* 727 F.2d 741, 744 (8th Cir.1984) (noting that the chance for administrative investigation and determination is the reason for the specificity requirement). In addition, no evidence has been presented that the IRS waived Plaintiffs' lack of factual specificity by investigating the Corporation's liquidation as possible grounds for treatment of the payments as long-term capital gains. *Cf. Quarty,* 170 F.3d at 973.

 Plaintiffs argue that any objections based on the doctrine of variance have been waived by Defendant as a result of its failure to raise such objections earlier in its pleadings. To the contrary, a lack of subject matter jurisdiction cannot be

---

1. While State Farm was involved in the termination of the Corporate Agreement, it was not directly involved in the Corporation's liquidation of its assets. Similarly, Trantina in his individual capacity had little to do with the termination of the Corporate Agreement, although his participation in the liquidation of the Corporation's assets occurred in his individual capacity.

waived and may be raised at any time before final judgment. *Grupo Dataflux v. Atlas Global Group, LP*, 541 U.S. 567, 124 S.Ct. 1920, 1924, 158 L.Ed.2d 866 (2004); *Quarty*, 170 F.3d at 973 n. 7. For this reason, Plaintiffs' Motion to Strike Defendant's Reply will be denied and Plaintiffs' Motion for Sur–Reply granted. Although Defendant raised the issue in its reply to its own cross-motion for summary judgment, and the issue could have been raised earlier, it may still be considered here. This Court lacks subject matter jurisdiction over Plaintiffs' claim that the Corporation's liquidation justified classification of the termination payments as long-term capital gains because this argument was not properly raised in Plaintiffs' claim for a refund. Dismissal of the matter is appropriate with respect to the Corporation liquidation argument (the "Section 331 argument").

## B. Summary Judgment

Having found that jurisdiction fails with respect to one of Plaintiffs' bases for their suit for refund, the Court must nevertheless address the remaining argument for relief. Plaintiffs maintain that they are entitled to classify the termination payments as long-term capital gains under Section 1222(3) as a result of the termination of the Corporate Agreement, which Plaintiffs term a "sale" of the agency back to State Farm. According to Plaintiffs, this reclassification then requires summary judgment for a refund of Plaintiffs' overpayment of the taxes on the termination payments.

The standard for summary judgment is set forth in Rule 56(c) of the Federal Rules of Civil Procedure. Under this rule, summary judgment is properly granted when: (1) no genuine issues of material fact remain; and (2) after viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed.R.Civ.P. 56; *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288–89 (9th Cir.1987).

In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence if it is supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2548; *Eisenberg*, 815 F.2d at 1289. However, the non-moving party may not merely rest on its pleadings, he must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986) (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968).

Section 1222(3) defines long-term capital gain as "gain from the sale or exchange of a capital asset held for more than one year ...." 26 U.S.C. § 1222(3). In order to treat the termination payments as long-term capital gain, Plaintiffs must prove both (1) that Trantina owned a capital asset and (2) that he sold the capital asset in exchange for the termination payments. 26 U.S.C. § 1222(3); *see also Baker v. Comm'r of Internal Revenue*, 338 F.3d 789, 793 (7th Cir.2003). The Court will address each of these elements in turn.

■ Plaintiffs do not argue that policyholder information, policy manuals, drafting tools, or other implements of the insurance trade are the capital assets at issue in this case. Indeed, such an argument would fail, as State Farm owned all such property under the terms of the Corporate Agreement. *See Baker*, 338 F.3d at 793 (finding that taxpayer owned no capital

assets under a nearly identical insurance agent agreement with State Farm). Instead, Plaintiffs assert that the Corporate Agreement itself constituted the capital asset sold in exchange for the termination payments. The Court finds this argument unconvincing.

The suggestion that the Corporate Agreement is itself an asset, when it declares that all assets pertaining to Plaintiffs' insurance agency belong to State Farm, is paradoxical. As a matter of logic, it is difficult to see how a contract declaring that Plaintiffs own no assets may be an asset itself. Although Plaintiffs possessed certain rights under the Corporate Agreement, such as the right to solicit customers, submit applications for insurance, and collect premiums, Plaintiffs could not sell, assign, or pledge any of these interests without the prior written consent of State Farm. Unlike the taxpayer in the case of *Commissioner of Internal Revenue v. Ferrer*, 304 F.2d 125 (1962), cited by Plaintiffs in support of the proposition that contractual rights may be assets, Plaintiffs lacked even a "negative power" to prevent State Farm from certain behavior. Plaintiffs had no ability to obtain value from the Corporate Agreement other than through compliance with its terms. Even the simple termination of Plaintiffs' rights under the Corporate Agreement would not result in the accretion of value through termination payments unless Plaintiffs also complied with additional terms pertaining to the return of State Farm property and solicitation of policyholders.

Even assuming arguendo that the Corporate Agreement may be deemed an asset belonging to Plaintiffs, Plaintiffs must nevertheless prove that this asset was sold or exchanged for the termination payments. This interpretation of events simply does not fit the facts at hand. The termination payments were not received in exchange for the sale of the Corporate Agreement; they were received *under* the Corporate Agreement in exchange for compliance with other terms thereof, such as the return of all property belonging to State Farm within a given period of time and the signature of a covenant not to compete. The discharge of a contract by payment in accordance with its terms does not constitute the sale or exchange of property. *See Spray Water Power & Land Co. v. Comm'r of Internal Revenue*, 20 T.C.M. (CCH) 353 (1961); *Gann v. Comm'r of Internal Revenue*, 41 B.T.A. 388, 395–96 (1940).

As a matter of law, the termination payments do not qualify as long-term capital gains because Plaintiffs possessed no capital assets to sell, and even if the Corporate Agreement were to be construed as a capital asset, it was not sold or exchanged in consideration of the termination payments. Defendant is entitled to summary judgment on this argument.

## C. Doctrine of Consistency

The parties expend considerable time arguing about the doctrine of consistency and its applicability with respect to the timing of the reporting of the termination payments. The Court will not repeat these arguments at length. Defendant appears to have initiated the argument based on the mistaken belief that Plaintiffs were contending that termination payments made in 1999 need not be reported as any kind of income unless the termination payments were entitled to treatment as long-term capital gains. As Plaintiffs do not actually make this argument, further discussion of the doctrine of consistency is unnecessary.

**IT IS ORDERED** denying Plaintiffs' Motion to Strike (Doc. 30–1).

**IT IS FURTHER ORDERED** granting Plaintiffs' Motion for Sur–Reply (Doc. 30–2).

**IT IS FURTHER ORDERED** denying Plaintiffs' Motion for Summary Judgment (Doc. 17).

**IT IS FURTHER ORDERED** granting Defendant's Cross–Motion for Summary Judgment with respect to the argument that the termination of the Corporate Agreement between State Farm and Trantina requires taxation of the termination payments as long-term capital gains (Doc. 19).

**IT IS FURTHER ORDERED** dismissing for lack of subject matter jurisdiction the portion of Plaintiffs' complaint advancing the argument that the liquidation of the Corporation's assets requires taxation of the termination payments as long-term capital gains (the "Section 331 argument").

**IT IS FURTHER ORDERED** directing the Clerk of the Court to enter judgment in favor of Defendant, thereby terminating this case.