**PROMAC, INC., Appellant,**

v.

**Togo D. WEST, Jr., Secretary of Veterans Affairs, Appellee.**

**No. 99–1075.**

United States Court of Appeals, Federal Circuit.

Feb. 8, 2000.

Christopher M. Johnson, Kilcullen, Wilson & Kilcullen, of Washington, DC, argued for appellant. With him on the brief was Ronald E. Gilbertson. Of counsel was Claude P. Goddard, Jr.

Patricia M. McCarthy, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for appellee. With her on the brief were David W. Ogden, Acting Assistant Attorney General; David M. Cohen, Director; and Mark A. Melnick, Assistant Director. Of counsel on the brief was Patrick J. LaMoure, Trial Attorney, Office of General Counsel, Department of Veterans Affairs, of Washington, DC.

Before NEWMAN, MICHEL, and PLAGER, Circuit Judges.

PLAGER, Circuit Judge.

Promac, Inc. ("Promac") was the lowest bidder for a contract with the Department of Veterans Affairs to construct a new medical research building. When performance was almost complete, Promac filed a claim for reformation of its contract based upon alleged violations of the Federal Acquisition Regulations by the Government in the bidding process. The Contracting Officer ("CO") denied Promac's claims. The Department of Veterans Affairs Board of Contract Appeals ("DVABCA" or "Board") upheld the CO's decision. *See Promac, Inc. v. VA Med. Ctr.,* 1998 WL 780537, VABCA No. 5345 (VABCA Oct. 27, 1998). Because the Board did not err, we affirm.

## BACKGROUND

In June of 1995, the Department of Veterans Affairs ("VA" or "Government") issued an Invitation for Bids ("IFB") for the construction of a 13,000 square foot research building at the VA's Medical Center in Providence, Rhode Island. Although the VA's Architect Engineering firm ("A/ E") made a final estimate for the project

of $3,075,000 with deductive alternates totaling $307,000, the IFB stated the cost of the project to be between $2 and $5 million. At the time the IFB was issued, the Medical Center in Providence had only received approval to spend $2,648,000 on the construction project.

The VA opened bidding on August 1, 1995. Seven firms returned bids ranging from $3,119,000 to $3,354,700. After bids were received, the A/E wrote to the CO that Promac's bid was within 1% of the final cost estimate and that it was the A/E's opinion that the VA had received a valid and fair low bid. According to Promac, the Contracting Officer notified Promac that it was the low bidder and that there was a funding problem. The CO allegedly told Promac that the VA was attempting to secure sufficient funds to make an award to Promac.

The VA Medical Center in Providence requested an increase in its budget for the project. That request, however, was not granted. Under the applicable Federal Acquisition Regulations ("FAR"), the VA was required to initiate a new bidding round. FAR 14.404–1 provides that if an IFB is canceled because the bid prices received were unreasonable, an agency may proceed with procurement through negotiations with the original bidders. However, if the IFB was canceled for other reasons, then procurement should continue with a new acquisition. The VA's staff architect devised a scheme to avoid the delays a rebid would add and also manage to lower the existing bid prices. In a letter to the CO, the staff architect suggested that instead of soliciting bids again, the VA should simply negotiate with the existing bidders in hopes of bringing the bids down. The CO adopted that scheme, writing a letter that stated that the IFB was canceled because "all bids received, although otherwise acceptable, are unreasonable in price." Thus, even though the lowest bid was within 1% of the A/E's final cost estimate, the IFB was canceled due to "unreasonable" bid prices

and procurement was set to proceed through negotiations rather than a new acquisition.

Before beginning negotiations with the original bidders, the VA made some minor changes to the project. The VA notified the bidders of the changes and that the deductive items of the IFB were now to be included in the base bid. It then requested that the original bidders submit new offers.

After receiving the revisions to the project, Promac's president received a telephone call from the CO. According to Promac, the CO proceeded to violate FAR 15.610 by stating that Promac would have to offer a price of around $2.7 million to remain competitive in the procurement. FAR 15.610 provides that indicating to an offeror a price that it must meet to obtain further consideration is a prohibited auction technique. The CO denied that he ever suggested a target price. In calculating its new bid, Promac reduced its profit, overhead, and field supervision expenses so that its new price was $2,723,000. After all the new prices were submitted, which ranged between $2,723,000 and $2,900,000, it turned out that, once again, Promac was the lowest bidder.

The VA awarded the contract to Promac, and Promac completed performance in May 1997. Before Promac had completed performance, it filed a claim seeking reformation of the contract, alleging that it was due the difference between its original bid and its final bid. Promac asserted that it had submitted a reasonably priced original bid and that the VA had violated the FAR by canceling the IFB and continuing the procurement through negotiations. Because it suffered damages as a result of the VA's actions, Promac alleged it was entitled to reformation of its contract to the extent that its price had been affected by the VA's violations. The CO issued a final decision denying the claim.

Promac appealed the denial to the DVABCA. Both Promac and the VA

moved for summary judgment. In its summary judgment motion, Promac for the first time asserted that the CO's suggestion of a target price was another violation of the FAR and consequently an additional ground for recovery. The Board denied Promac's motion and granted the VA's motion for summary judgment that Promac was not entitled to reformation. Viewing the facts in the light most favorable to Promac, the non-movant, the Board concluded that the original bid prices were reasonable, and thus the VA violated FAR 14.404–1 when it continued procurement by negotiations rather than by a new acquisition.

Despite the violation, the Board concluded that Promac's claim for reformation failed because FAR 14.404–1, specifically subpart (e), was not adopted for the benefit of a low bidder. Interpreting *LaBarge Prods., Inc. v. West,* 46 F.3d 1547 (Fed.Cir. 1995), the Board reasoned that Promac had to meet two requirements in order for it to be entitled to reformation: 1) the violated regulation was adopted for the benefit of Promac, and 2) Promac was damaged by the violation of the regulation. Since FAR 14.404–1(e) benefited bidders that did not submit the low bid by giving them a second chance to bid through a new acquisition, the low bidder, in this case Promac, certainly was not able to meet the first prong of the test. Thus, it was not entitled to reformation due to the violation of FAR 14.401–1.

The Board similarly reasoned that Promac was not the intended beneficiary of FAR 15.610. FAR 15.610 provides that indicating to an offeror a price that it must meet to obtain further consideration is a prohibited auction technique. Although it was disputed whether the CO did set a target price, the Board reasoned that even if he had, Promac was not the intended beneficiary of such a regulation. Instead, it was the bidders who had not been privy to the disclosed target price that were the intended beneficiaries. Thus, even assuming all of Promac's allegations to be true,

Promac could not meet the first prong of the test. Consequently, Promac was not entitled to reformation even if the VA had violated FAR 15.610.

In addition, the Board noted that throughout the procurement process, Promac not only did not complain of the alleged violations, but actively participated in all of these alleged violations. Thus, Promac did not have the clean hands necessary to receive the equitable remedy of reformation.

## DISCUSSION

■ In reviewing a Board's grant of summary judgment, we must make an independent determination as to whether the standards for summary judgment have been met. *See Conroy v. Reebok Int'l Ltd.,* 14 F.3d 1570, 1575 (Fed.Cir.1994). In considering whether summary judgment should have been granted, we view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in its favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *SRI Int'l v. Matsushita Elec. Corp.,* 775 F.2d 1107, 1116, 227 USPQ 577, 581 (Fed.Cir. 1985) (en banc). A motion for summary judgment is properly granted only if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). When both parties move for summary judgment, each party's motion must be evaluated on its own merits and all reasonable inferences must be resolved against the party whose motion is under consideration. *See Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1390 (Fed.Cir.1987).

■ On appeal Promac continues to assert that the VA committed wrong-doing in the pre-award process, therefore entitling Promac to reformation. According to Promac, FAR 14.404–1 was intended to benefit a low bidder and disputed issues of fact remain as to how much it was dam-

aged by the VA's violation of that regulation. Promac also contends that there remain genuine issues of material fact as to whether there was a violation of FAR 15.610. Thus, summary judgment was inappropriate. In addition, Promac argues that the Board's implied finding that Promac willingly engaged in conduct that violated the FAR prevents it from obtaining the equitable remedy of reformation was improper since no fact findings should have been made on summary judgment.

In the case at hand, the Government's conduct was clearly far less than stellar. Nonetheless, viewing the evidence in the light most favorable to Promac, we conclude that Promac is not entitled to contract reformation because it benefited from and actively participated with the VA in the procurement process that it now alleges was in violation of the FAR. Even if we treat as true the allegations that the VA inappropriately canceled the IFB and inappropriately continued procurement by negotiation rather than by a new acquisition, we cannot reach the conclusion that Promac is entitled to equitable relief. By continuing procurement by negotiations, Promac was put in a more advantageous position than if the VA had properly continued procurement by a new acquisition. If the VA had continued with a new acquisition, the second round of bidding would have been open rather than limited to the original seven bidders. Moreover, Promac actively participated in the negotiations that were limited to the original bidders, submitting the winning bid. Having been a participant in the alleged improper proceedings and having benefited by its participation, Promac is not in a position to receive equitable relief. See LaBarge, 46 F.3d at 1556.

For purposes of reviewing the grant of summary judgment, we further treat as true Promac's allegation that the CO set a target price in a phone conversation with Promac's president. We note that Promac did not complain at the time that setting a target price was inappropriate. Instead, it used that allegedly improperly supplied target price and adjusted its bid to be close to that target price. Thus, it clearly benefited from the CO's alleged disclosure of the target price and cannot be entitled to equitable relief. See id.

Through its active participation with the VA in the allegedly improper bidding process, Promac benefited by being one of the limited number of bidders chosen for negotiations and by receiving more knowledge than other bidders when the CO set a target price. Furthermore, Promac ultimately benefited by being awarded the contract. Due to its participation and the benefits it acquired from its participation in the alleged violations of the FAR, Promac has unclean hands and is not entitled to the equitable remedy of contract reformation.[1]

## CONCLUSION

Accordingly, summary judgment for the Government that Promac is not entitled to reformation is

*AFFIRMED.*

## COSTS

No costs.

---

1. Since Promac is ineligible for equitable relief, we do not reach the issues of whether Promac was the intended beneficiary of the cited regulations or whether the Government has breached those regulations.