Douglas Q. KITT and Nancy
C. Kitt, Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 99–316T.

United States Court of Federal Claims.

Oct. 6, 2000.

Nancie G. Marzulla, Washington, D.C., for plaintiffs.

Mary M. Abate, Washington, D.C., with whom were Paula M. Junghans, Acting Assistant Attorney General, Mildred L. Seidman, Chief, Court of Federal Claims Section, and David Gustafson, Assistant Chief, for defendant.

### Opinion and Order

WEINSTEIN, Judge.

This case is before the court on the parties' cross-motions for summary judgment. No facts are disputed. The question of law for the court to decide is whether retroactive imposition of a new 10–percent tax on a non-qualified withdrawal from plaintiffs' Roth IRA constitutes a violation of the Due Process or Just Compensation Clauses of the Fifth Amendment, or of the Excessive Fines Clause of the Eighth Amendment. Concluding that plaintiffs are not entitled to a refund of the retroactively-imposed tax, the court denies plaintiffs' motion for summary judgment and grants defendant's cross-motion for summary judgment.

### Statutory and Legislative Background

Congress enacted the first provisions allowing favorable tax treatment of individual retirement accounts (traditional IRAs) in 1974. These provisions are codified at Internal Revenue Code (I.R.C. or Code)[1] § 408 (1994). Generally, distributions from traditional IRAs are included in a taxpayer's gross income. *Id.* § 408(d)(1). The tax treatment of this income is governed by section 72. *Id.*

I.R.C. section 72(b) provides that "[g]ross income does not include" amounts of a distribution attributable to the taxpayer's investment in an IRA. *See id.* § 72(b)(1) (1994) (excluding from gross income any amount in a distribution that "bears the same ratio to such amount as the investment ... bears to the expected return ...."). Section 72 also provides for a 10-percent additional tax on a non-retirement (and thus not excepted)[2] distribution from an IRA, to the extent the distribution is includible in gross income:

> If any taxpayer receives any amount from a qualified retirement plan (as defined in section 4974(c)), the taxpayer's tax under this chapter for the taxable year in which such amount is received shall be increased by an amount equal to 10 percent of the portion of such amount which is includible in gross income.

*Id.* § 72(t)(1) (1994) (section 72(t) tax). Congress imposed the section 72(t) tax on withdrawals for non-retirement purposes that were includible in gross income "in order to discourage withdrawals and to recapture a measure of the tax benefits that have been provided." H.R.Rep. No. 99–426, at 728–29 (1985).

The Taxpayer Relief Act of 1997, Pub.L. No. 105–34, § 302, 111 Stat. 788, 825–29 (1997) (codified at I.R.C. § 408A (Supp. III 1997)) (1997 Act or Act), added the Roth IRA to the I.R.C. The Act made contributions to Roth IRAs not deductible from income. *Id.* § 408A(c)(1). However, it provided that any "qualified distribution from a Roth IRA shall not be includible in gross income." *Id.* § 408A(d)(1)(A).

Under the Act, distributions from a traditional IRA immediately contributed to a Roth IRA were considered "conversions" or "rollovers" (conversion rollover contributions). *Id.* § 408A(d)(3)(C). "Notwithstanding section 408(d)(3) ...," such contributions were included in gross income to the extent otherwise includible. *Id.* § 408A(d)(3)(A)(i). However, a taxpayer making a conversion

---

rollover contribution was exempt from the section 72(t) penalty. *Id.* § 408A(d)(3)(A)(ii) ("section 72(t) shall not apply . . . .").

Section 408A(d)(1)(B) provided a special rule for applying section 72 to non-qualified distributions from a Roth IRA:

> In applying section 72 to any distribution from a Roth IRA which is not a qualified distribution, such distribution shall be treated as made from contributions to the Roth IRA to the extent that such distribution, when added to all previous distributions from the Roth IRA, does not exceed the aggregate amount of contributions to the Roth IRA.

Under this provision, if a taxpayer made a conversion rollover contribution, followed by a distribution from his Roth IRA in an amount less than or equal to the conversion rollover amount, the whole distribution would be attributable to his investment in the Roth IRA pursuant to section 408A(d)(1)(B), and not includible in gross income pursuant to section 72(b)(1). In short, after a conversion rollover contribution to a Roth IRA a taxpayer could make an immediate non-qualified distribution from the Roth IRA and completely avoid the 10-percent section 72(t) tax, because the tax only applies to amounts "includible in gross income."

The Roth IRA's legislative history clearly states that Congress did intend to exclude from gross income non-qualified Roth IRA distributions (to the extent attributable to contributions to the Roth IRA) but did not intend to exempt from the section 72(t) tax both qualified rollover conversion contributions *into* a Roth IRA and otherwise non-qualified distributions *from* the Roth IRA:

> Qualified distributions from an AD IRA [later renamed as Roth IRA] are not includible in gross income, nor subject to the additional 10-percent tax on early withdrawals . . . . Distributions from an AD IRA that are not qualified distributions are includible in income to the extent attributable to earnings, and subject to the 10-percent early withdrawal tax (unless an exception applies).

H.R.Rep. No. 105–148, at 337–38 (1997), *reprinted in* 1997 U.S.C.C.A.N 678, 731–32;

*see also* H.R.Rep. No. 105–220, at 380 (1997), *reprinted in* 1997 U.S.C.C.A.N 1129, 1192 (Conference Report) (stating that the Senate's amendment provided for the same taxation of distributions).

As early as August 25, 1997, tax analysts noted both that the 1997 Act contained this unintended consequence and that Congress would consider a cure. *See* 76 Tax Notes 1003 (Aug. 25, 1997); *see also* 76 Tax Notes 1663 (Sept. 29, 1997) (House Ways and Means Committee considering corrections to cure unintended section 72(t) consequences). On December 12, 1997, the IRS published interim guidance on Roth IRAs stating that the House had passed a cure that, if enacted, would be retroactive to January 1, 1998. I.R.S. Announcement 97–122, 1997–50 I.R.B. 63.

Plaintiffs effected the rollover and distribution in March and April, 1998, seven months after the first Tax Notes article and three months after the I.R.B. was published. On July 22, 1998, Congress enacted the Internal Revenue Service Restructuring and Reform Act of 1998 (1998 Act). Pub.L. No. 105–206, § 6005, 112 Stat. 685 (1998). The 1998 Act added a "special rule for applying section 72" to the Roth IRA. I.R.C. § 408A(d)(3)(F) (West Supp.2000). This rule states that taxpayers may not avoid the section 72(t) tax on non-qualified distributions from a Roth IRA:

> In general.—If—(I) any portion of a distribution from a Roth IRA is properly allocable to a qualified rollover contribution described in this paragraph; and (II) such distribution is made within the 5-taxable year period beginning with the taxable year in which such contribution was made, then section 72(t) shall be applied as if such portion were includible in gross income.

*Id.* § 408A(d)(3)(F)(i). The 1998 Act amendments were made applicable to all Roth IRA withdrawals occurring in 1998, *i.e.* retroactive to the beginning of the 1998 tax year.

### Facts

The parties have stipulated to the following:

On March 6, 1998, Mr. Kitt funded his Roth IRA through a conversion rollover contribution of $69,059 from his existing traditional IRA. The contribution amount was included in Mr. Kitt's gross income, but was not treated as subject to the new 10-percent additional tax, pursuant to section 408A(d)(3)(A)(i)-(iii). On April 27, 1998, Mr. Kitt withdrew $53,000 from his Roth IRA for a non-qualified purpose (to pay the plaintiffs' house mortgage).

On February 3, 1999, plaintiffs' jointly-filed tax return reported the $53,000 distribution and submitted a payment of $18,615 to cover the unpaid tax liability shown on the return. $5,300 of the $18,615 unpaid tax liability represented the 10-percent tax imposed when section 72(t) was applied "as if [the $53,000] were includible in gross income." *Id.* § 408A(d)(3)(F)(i). Plaintiff's refund claim for $5,300 was disallowed.

On May 18, 1999, plaintiffs filed their complaint, claiming that the retroactive imposition of the $5,300 section 72(t) tax constitutes a penalty violating the Due Process and Just Compensation Clauses of the Fifth Amendment, and an Excessive Fine violating the Eighth Amendment. The parties' cross-motions for summary judgment are fully briefed. Neither party has requested oral argument, and the court deems it unnecessary.

### Discussion

*Standard of Review*

Summary judgment is appropriate when the court finds both that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c) of the Rules of the United States Court of Federal Claims; *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The moving party bears the burden of demonstrating the absence of genuine issues of material fact." *Dairyland Power Coop. v. United States,* 16 F.3d 1197, 1202 (Fed.Cir.1994). The parties have stipulated to the material facts; none are in dispute.

"The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other." *Prineville Sawmill Co. v. United States,* 859 F.2d 905, 911 (Fed.Cir.1988). "When both parties move for summary judgment, each party's motion must be evaluated on its own merits and all reasonable inferences must be resolved against the party whose motion is under consideration." *Promac, Inc. v. West,* 203 F.3d 786, 788 (Fed.Cir.2000).

*Due Process*

Plaintiffs argue that retroactive imposition of the section 72(t) tax violates the Due Process Clause of the Fifth Amendment to the United States Constitution as a new penalty that is not rationally related to a legitimate governmental purpose. Defendant argues that the tax is not a penalty and is rationally related to the legitimate governmental purposes of curing Congress' mistake and recouping a portion of tax benefits conferred.

Whether characterized as a tax or a penalty, the statute in this case is economic legislation "adjusting the burdens and benefits of economic life . . . ." *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 15, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976); *Licari v. Comm'r,* 946 F.2d 690, 694 (9th Cir.1991) (treating a retroactively increased tax penalty as economic legislation for due process analysis).

The Supreme Court "repeatedly has upheld retroactive tax legislation against a due process challenge." *United States v. Carlton,* 512 U.S. 26, 30, 114 S.Ct. 2018, 129 L.Ed.2d 22 (1994). The Court applies the same standard applicable to other retroactive economic legislation. *Id.* Such legislation does not offend due process if "the retroactive application of the legislation is itself justified by a rational legislative purpose." *Id.* at 31, 114 S.Ct. 2018 (quoting *Pension Benefit Guar. Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 730, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984) (citing *Usery,* 428 U.S. at 16–17, 96 S.Ct. 2882)).

Congress acts rationally when it cures "what it reasonably viewed as a mistake . . . that would have created a significant and unanticipated revenue loss" if it "act[s] promptly and establishes only a modest period of retroactivity." *Id.* at 32, 114 S.Ct.

2018. Congress also acts rationally when "enactment of retroactive statues [is] 'confined to short and limited periods required by the practicalities of producing national legislation ....'" *R.A. Gray*, 467 U.S. at 731, 104 S.Ct. 2709 (quoting *United States v. Darusmont*, 449 U.S. 292, 296–97, 101 S.Ct. 549, 66 L.Ed.2d 513 (1981)); *see also Fein v. United States*, 730 F.2d 1211, 1212 (8th Cir. 1984) (retroactive taxes rational because taxpayers otherwise could "order their affairs freely to avoid the effect of the change").

■ "[A]pplication of an income tax statute to the entire calender year in which enactment took place does not per se violate [due process]." *Darusmont*, 449 U.S. at 297, 101 S.Ct. 549 (citing cases). Rather, "it is a customary congressional practice." *Id.* A taxpayer's lack of actual notice that an amendment was to be enacted is not dispositive. *Carlton*, 512 U.S. at 34, 114 S.Ct. 2018. Even if notice were relevant, constructive notice based on public discussion will suffice. *Darusmont*, 449 U.S. at 299, 101 S.Ct. 549 ("Assuming, for purposes of argument, that personal notice is relevant ... public discussion for almost a year before enactment .... [provides] ample advance notice ....")

■ Congress plainly did not intend to exempt from the section 72(t) tax both conversion rollover contributions *into* a Roth IRA and non-qualified distributions *from* the Roth IRA. Enacting and applying a retroactive statute to cure the problem was rational, *Carlton*, 512 U.S. at 32, 114 S.Ct. 2018, to prevent taxpayers from taking advantage of the legislative process by making their conversion rollover contributions and subsequent withdrawals before the problem was cured. *R.A. Gray*, 467 U.S. at 731, 104 S.Ct. 2709; *Fein*, 730 F.2d at 1212. It also is rational because it prevents a potentially significant and unanticipated revenue loss by recouping a measure of the tax benefits provided by tax-favored retirement accounts. *Carlton*, 512 U.S. at 32, 114 S.Ct. 2018.

The one-year period of retroactivity in this case plainly is "modest" and conforms with "customary congressional practice." *Darusmont*, 449 U.S. at 297, 101 S.Ct. 549. It is confined to the limited period needed to enact the corrective legislation. *R.A. Gray*, 467

U.S. at 731, 104 S.Ct. 2709. Public discussion of the mistake and proposed retroactive cure began shortly after the 1997 Act was enacted and gave plaintiffs constructive notice, if relevant. *Darusmont*, 449 U.S. at 299, 101 S.Ct. 549; *cf. Quarty v. United States*, 170 F.3d 961, 967 (9th Cir.1999) (a wholly new tax "is imposed only when the taxpayer has 'no reason to suppose that any transactions of the sort will be taxed at all' ") (quoting *Darusmont*, 449 U.S. at 298, 101 S.Ct. 549); *Furlong v. Comm'r*, 36 F.3d 25, 28 (7th Cir.1994) (legislative activity before taxpayer acted provided reasonable notice that transaction might be taxed, thus tax was not a "wholly new tax").

*Taking*

Plaintiffs alternatively argue that the retroactive imposition of the section 72(t) tax on their non-qualified Roth IRA distribution constitutes a taking in violation of the Fifth Amendment because it does not substantially advance its stated purpose. Defendant argues that retroactive imposition of the section 72(t) tax substantially advances the purpose of recouping tax benefits conferred, and is not otherwise a taking for which just compensation is due.

■ Congressional exercise of the power to tax does not generally violate the Fifth Amendment's prohibition against takings without just compensation. *See Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104, 124, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978) ("Exercises of the taxing power are one obvious example" where the government may "adversely affect recognized economic values .... without paying for every such change in the general law ...."); *Quarty*, 170 F.3d at 969 (same). To be treated as a taking, the Congressional act must be "so arbitrary as to constrain to [sic] the conclusion that it was not the exertion of taxation, but a confiscation of property ...." *Brushaber v. Union Pac. R.R. Co.*, 240 U.S. 1, 24–25, 36 S.Ct. 236, 60 L.Ed. 493 (1916).

Moreover, the Court has noted that where "due process arguments are unavailing, 'it would be surprising indeed to discover' the challenged statute nonetheless violat[ed] the Takings Clause." *Concrete Pipe & Prods. of*

*Ca., Inc. v. Constr. Laborers Pension Trust for S. Cal,* 508 U.S. 602, 641, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993) (quoting *Connolly v. Pension Benefit Guar. Corp.,* 475 U.S. 211, 223, 106 S.Ct. 1018, 89 L.Ed.2d 166 (1986)); *see also Branch v. United States,* 69 F.3d 1571, 1577–78 (Fed.Cir.1995) (discussing why, "when addressing constitutional challenges to new rules of liability, the Supreme Court has regarded the Takings Clause as a first cousin of the doctrine of substantive due process....").

In a recent case, a plurality of the Supreme Court held that retroactive imposition of monetary liability consisting of newly-imposed contributions into a fund providing benefits to over 1000 retired miners who had worked for the plaintiff decades earlier effected an unconstitutional taking, but limited its holding to "the specific circumstances of [the] case ...." *Eastern Enterprises v. Apfel,* 524 U.S. 498, 537, 118 S.Ct. 2131, 141 L.Ed.2d 451 (1998). The plurality based its analysis on principles drawn from previous due process cases "considering the constitutionality of somewhat similar legislative schemes." *Id.* at 524, 118 S.Ct. 2131.[3] However, appellate courts in two circuits that have considered the issue have concluded that they are "bound to follow the five-four vote against the takings claim in Eastern ...." *Unity Real Estate Co. v. Hudson,* 178 F.3d 649, 659 (3d Cir.), *cert. denied,* —— U.S. ——, 120 S.Ct. 396, 145 L.Ed.2d 309 (1999); *Anker Energy Corp. v. Consolidation Coal Co.,* 177 F.3d 161, 170 n. 3 (3d Cir.), *cert. denied,* —— U.S. ——, 120 S.Ct. 496, 145 L.Ed.2d 383 (1999), (quoting *Unity Real Estate*); *Ass'n of Bituminous Contractors, Inc. v. Apfel,* 156 F.3d 1246, 1254 n. 5 (D.C.Cir. 1998) ("The only conceivable change in takings jurisprudence brought about by Eastern Enterprises is that the five dissenting jus-

tices ... apparently believe that imposition of liability alone is not a taking of property under the Fifth Amendment.").

To the extent that the takings analysis in *Eastern Enterprises* applies, it requires plaintiff to show that the act "imposes severe retroactive liability on a limited class of parties that could not have anticipated the liability, and the extent of that liability is substantially disproportionate to the parties' experience." 524 U.S. at 528–29, 118 S.Ct. 2131. The amount of the retroactive liability must be substantial and the retroactivity "particularly far reaching." *Id.* at 534, 118 S.Ct. 2131.

■ Applying these principles to the facts of this case clearly demonstrates that the government is not liable for a taking. Following the five-four vote of the Court against applying the Takings Clause in *Eastern Enterprises,* the court concludes that the retroactive imposition of liability for the section 72(t) tax does not implicate the Takings Clause at all, because no "property", as that term is used in the Takings Clause, has been taken. *Unity Real Estate,* 178 F.3d at 659; *Anker Energy,* 177 F.3d at 170 n. 3; *Bituminous Contractors,* 156 F.3d at 1254 n. 5.

Even if the Takings Clause applied here, plaintiffs' claim must fail. First, plaintiffs' due process arguments fail because Congress' retroactive imposition of the section 72(t) tax is rationally related to the legitimate purposes of curing Congress' mistake and of recouping tax benefits improvidently provided. It thus would be surprising if the same imposition violated the Takings Clause. *Concrete Pipe,* 508 U.S. at 641, 113 S.Ct. 2264; *Connolly,* 475 U.S. at 223, 106 S.Ct. 1018; *Branch,* 69 F.3d at 1577–78.

Second, the retroactive liability is limited to 10-percent of the amount plaintiffs con-

---

**3.** Only four justices deemed it appropriate to analyze *Eastern Enterprises* as a takings case. The remaining five justices, one concurring in the judgment and dissenting in part, and four dissenting, would have viewed it as a due process case. *Id.* at 539–47, 118 S.Ct. 2131 (J. Kennedy, dissenting in part on grounds that takings inapplicable), 554–56, 118 S.Ct. 2131 (JJ. Breyer, Stevens, Souter, and Ginsburg, dissenting). Given the fractured nature of the decision in *Eastern Enterprises,* courts of appeals, like the plurality

itself, have limited the decision's applicability to cases where the plaintiff "stand[s] in a substantially identical position to Eastern Enterprises with respect to both the plurality and Justice Kennedy's concurrence." *Unity Real Estate Co. v. Hudson,* 178 F.3d 649, 659 (3rd Cir.1999); *Anker Energy Corp. v. Consolidation Coal Co.,* 177 F.3d 161, 170 (3d Cir.1999) (same); *Ass'n of Bituminous Contractors v. Apfel,* 156 F.3d 1246, 1255 (D.C.Cir.1998) (same).

tributed to their Roth IRA and then chose immediately to disburse, and reaches back less than three months in plaintiffs' case (and no more than seven months in any case). In contrast, Eastern Enterprises' substantial liability was "unrelated to any commitment [it] made," and reached back over decades. *Eastern Enterprises,* 524 U.S. at 537, 118 S.Ct. 2131.

Third, plaintiffs plainly could have anticipated the liability, since it was well known that Congress intended to cure its mistake by enacting a statute that would apply retroactively. *Id.* at 528–29, 118 S.Ct. 2131. Finally, the liability is directly in line with plaintiffs' experience since, at the time they originally funded their traditional IRA, they had to expect that any early, non-qualified distribution would be subject to the section 72(t) 10–percent additional tax.[4]  *Id.*

*Excessive Fine*

Plaintiffs argue that retroactive imposition of the section 72(t) tax violates the Excessive Fines Clause of the Eighth Amendment as a punishment that is grossly disproportionate to the harmfulness of their conduct. Defendant argues that even if section 72(t) were a penalty, it would not fall within the ambit of the Excessive Fines Clause because it is not, as it must be, a "punishment."

■ The Excessive Fines Clause applies to civil penalties only if they are punishments because the word 'fine' in the Excessive Fines Clause is " 'understood to mean a payment to a sovereign as punishment for some offense.' " *United States v. Bajakajian,* 524 U.S. 321, 327, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998) (quoting *Browning–Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.,* 492 U.S. 257, 265, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989) (holding that the Excessive Fines Clause did not apply to punitive damages awarded by a civil jury)). Plaintiffs argue that because the section 72(t) tax serves a deterrent purpose it constitutes a punishment.

■ The Supreme Court has not considered whether a tax can be a punishment for the purposes of the Excessive Fines Clause. However, the Court has held that a civil forfeiture imposed after conviction under a statute is a punishment for purposes of the Excessive Fines Clause only if it includes an innocent owner defense. *Bajakajian,* 524 U.S. at 328, 118 S.Ct. 2028 (forfeiture a punishment because, *inter alia,* "it cannot be imposed upon an innocent owner. . . ."); *Austin v. United States,* 509 U.S. 602, 619–20, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993) (forfeiture a punishment because Congress "expressly provide[d] an 'innocent owner' defense" ' which serves "to focus the provisions on the culpability of the owner in a way that makes them look more like punishment, not less . . . . [and] has chosen to tie forfeiture directly to the commission of [the] offenses").

■ The section 72(t) tax, as retroactively imposed through section 408A(d)(3)(F)(i), does not contain an innocent taxpayer defense. Thus, imposition of the tax is unrelated to the taxpayer's culpability. It also appears relevant that the tax is not imposed after a criminal proceeding but, rather, by operation of the I.R.C. and that it is unrelated to the "commission" or "conviction" of an underlying offense. *See Bajakajian,* 524 U.S. at 328, 118 S.Ct. 2028; *Austin,* 509 U.S. at 619–20, 113 S.Ct. 2801.

### *CONCLUSION*

Retroactive imposition of the section 72(t) 10-percent additional tax on plaintiffs' early and non-qualified withdrawal from their Roth IRA does not offend due process. The retroactive aspects of the provision are rationally related to the legitimate governmental purposes of curing Congress' mistake and recouping tax benefits conferred, and the retroactivity was confined to the seven month period necessary to enact the legislation and to prevent taxpayers from taking advantage of the period of enactment. Nor is it a taking. Imposition of liability in this case

---

4. When plaintiffs established their traditional IRA in the fall of 1997, their expectation must have been that any non-qualified withdrawals would be subject to the 10-percent tax, unless they planned to make a conversion rollover contribution and immediate distribution to take ad-

vantage of the Roth IRA loophole enacted earlier in 1997 (but not available until Jan. 1, 1998). Plaintiffs, however, do not allege that this was their expectation at the time they established their traditional IRA.

does not take plaintiffs' property, as that term is used in the Takings Clause. Even if the money paid were property, the failure of plaintiffs' due process argument, the moderate retroactivity of the statute, plaintiffs' ability to anticipate the tax imposition, and plaintiffs' expectations regarding taxation of traditional IRAs, all demonstrate that there has been no taking. Because imposition of the 72(t) tax is not "punishment", it is not an excessive fine that violates the Excessive Fines Clause.

Plaintiffs' motion for summary judgment is denied. Defendant's cross-motion for summary judgment is granted. The complaint is dismissed, with prejudice. No costs.

