Arthur E. LEES, Appellant,

v.

Donald L. EVANS, Secretary
of Commerce, Appellee.

No. 01–1549.

United States Court of Appeals,
Federal Circuit.

Feb. 15, 2002.

Before MAYER, Chief Judge,
BRYSON, and DYK, Circuit Judges.

PER CURIAM.

Arthur E. Lees appeals from a decision of the Armed Services Board of Contract Appeals granting summary judgment in favor of the government on his consolidated appeals seeking rescission or reformation of his contract with the Department of Commerce. Because we conclude that the Board made no legal error, we *affirm.*

■ Mr. Lees contends that the Board erred in concluding that the government employed him pursuant to a procurement contract rather than through appointment under the civil service laws. We disagree. The FAR provision covering personal service contracts, FAR 37.104(a), recognizes two methods by which the government can obtain personal services: (1) "by direct hire under competitive appointment or other procedures required by the civil service laws," or (2) by procurement under a FAR 37.104 personal services contract. "Personal services contract" is defined in FAR 37.101 as "a contract that, by its express terms or as administered, makes the contractor personnel appear, in effect, Government employees." FAR 37.104(a) recognizes that the personal services contract creates an "employer-employee" relationship.

The contract between Mr. Lees and the government makes clear that Mr. Lees entered into a personal services procurement contract. On the front page of the contract, prominently displayed in the middle of the page, was the statement "THE CONTRACTOR is NOT a direct-hire employee of the U.S. Government" (emphasis in original). The contract states that the period of performance was from December 15, 1997, to September 30, 1998. The "Health Insurance" provision of the contract drew the following distinction between the "contractor" and "direct-hire personnel": "The contractor shall be provided a maximum contribution of up to 50% against the actual costs of annual health insurance costs, provided that such costs may not exceed the maximum U.S. Government contribution for direct-hire personnel." The "Social Services" clause of the contract stated that "[c]ontract employees are to be considered as employees for the purposes of any ... law of general applicability to an employer and employee." The "Disputes" clause made the contract subject to the Contract Disputes Act. Those contractual provisions all indicate

that Mr. Lees was employed under a FAR 37.104 personal services contract and not by appointment under the civil service laws.

■ With respect to the JF–62 form that was issued at the outset of Mr. Lees' employment, we agree with Mr. Lees that the Board was imprecise in stating that the form identified Mr. Lees "as a 'contractor,' not an employee." The words "contractor" and "employee" both appear in the JF–62 form. The mere appearance of the word "employee" on the JF–62 form, however, does not indicate that Mr. Lees was appointed to a federal position under the civil service laws. To the contrary, the use of the term "employee" is consistent with the statement in FAR 37.104(a) that a personal services contract creates an "employer-employee relationship." In addition, the JF–62 form provided that Mr. Lees' employment term would expire on a particular date—September 30, 1998—which is indicative of a personal services contract, not an appointment under the civil service laws.

■ Mr. Lees contends that the two letters he received from the U.S. Embassy on November 24, 1997, indicate that the personnel officer intended her actions to constitute an appointment of Mr. Lees as a federal employee under the civil service laws. We disagree. To be considered a civil service appointed employee, an individual must satisfy all three of the criteria set forth in 5 U.S.C. § 2105: being appointed to a civil service position by a designated official; engaging in the performance of a federal function; and being subject to the supervision of a named federal official. *Horner v. Acosta*, 803 F.2d 687, 691 (Fed.Cir.1986). All three elements have independent significance and are strictly applied. *Id.* Mr. Lees' argument that he was employed under the civil service laws fails because he cannot satisfy

the first criteria: appointment by a designated official.

Appointment is a discrete act that occurs when the last act to be done by the appointing authority is performed. *Skalafuris v. United States*, 231 Ct.Cl. 173, 683 F.2d 383, 386 & n. 12 (1982). The completion of an SF–50 or SF–52 personnel form is an important factor in determining whether an appointment has occurred. *Id.* at 387. In this case, the two letters Mr. Lees received from the U.S. Embassy cannot be said to "appoint" him to a federal position or offer him an appointment for his acceptance. In fact, the Commercial Service PIT/PSC Hiring Check List submitted in Mr. Lees' appendix makes clear that issuance of a JF–62 form is used to distinguish employment under a personal services contract from appointments to part-time intermittent or temporary employment positions, which are confirmed by the use of an SF–52 form.

■ Mr. Lees contends that his employment must have been pursuant to appointment because the government lacked statutory authority to obtain his services by personal services contract. Again, we disagree. FAR 37.104(b) provides that "[a]gencies shall not award personal services contracts unless specifically authorized by statute." We agree with the Board that the ITA appropriations legislation for fiscal years 1997 and 1998, which authorizes "employment of Americans and aliens by contracts for services," provided statutory authority for the award of Mr. Lees' personal services contract in accordance with FAR 37.104(b).

■ Mr. Lees contends that his contract should be rescinded by reason of illegality because the government failed to comply with certain FAR contract formation requirements. The Board found that the government did not publicize the proposed

contract action in the Commerce Business Daily or as otherwise provided by regulation; it did not use sealed bidding or competitive proposals to solicit Mr. Lees' services; and it did not follow the appropriate procedures to support a deviation from these requirements. The Board further found, however, that Mr. Lees participated in and benefited from the defective acquisition process to which he now objects, and that he cannot now claim to benefit from the defects in the process that led to his employment. We agree with the Board's analysis. The FAR provisions to which Mr. Lees points are those designed to promote competition in the contract award contest. As the contract awardee, Mr. Lees was not prejudiced by the violation of those provisions. Accordingly, the Board did not err in concluding that Mr. Lees cannot invoke those provisions in support of his argument that he must be regarded as an appointee because his contract was unlawfully procured and thus must be rescinded or reformed. *See Promac, Inc. v. West,* 203 F.3d 786, 789 (Fed.Cir.2000) (finding a bidder not entitled to equitable relief of reformation where it benefited from and participated in challenged procurement process).

■ In the alternative, Mr. Lees contends that the conduct of the parties evidences an implied-in-fact contract under which he should be compensated at the level of FSO grade 5, step 6, commensurate with the quality of services he provided. Having already concluded that there was an express, written, personal services contract between Mr. Lees and the government, we reject Mr. Lees' argument that there was an implied-in-fact contract covering the same subject matter. *See Algonac Mfg. Co. v. United States,* 192 Ct.Cl. 649, 428 F.2d 1241, 1255 (1970).

■ Finally, Mr. Lees contends that the government should be judicially estopped from arguing that he was a contract employee because that argument is inconsistent with arguments the government made in earlier proceedings. Prior to this litigation, the Department of Commerce opposed protests filed by Mr. Lees before the GAO with respect to the Department's subsequent efforts to fill commercial representative positions at the U.S. Embassy in Beijing and at the U.S. Consulates in Chengdu and Shenyang. In those proceedings, the Department of Commerce successfully argued that GAO lacked bid protest authority because the protested actions were employment contracts rather than procurements governed by the FAR. GAO dismissed Mr. Lees' protests on the grounds that the authorizing statutory language envisioned employment actions under federal employment laws rather than personal service contracts under the FAR. In its brief to this court, however, the government now argues that the Board was correct to conclude that Mr. Lees was employed under a personal services procurement contract in accordance with FAR 37.104.

The doctrine of judicial estoppel provides that when a party successfully urges a particular position in a legal proceeding, it is estopped from taking a contrary position in a subsequent proceeding where its interests have changed. *Davis v. Wakelee,* 156 U.S. 680, 689, 15 S.Ct. 555, 39 L.Ed. 578 (1895). Judicial estoppel is designed to prevent the perversion of the judicial process and, as such, is intended to protect the courts rather than the litigants. *Data Gen. Corp. v. Johnson,* 78 F.3d 1556, 1564 (Fed.Cir.1996). Here, it appears that the government did not adopt its inconsistent position before the Board. Instead, it has changed its position only on appeal to this court, where it supports the Board's decision, which was based on a ground different from the position taken by either party

before the Board. Because the Board, and not the government, introduced the issue as to whether Mr. Lees' contract was a procurement contract governed by FAR 37.104, the government is not estopped from arguing that the Board's decision, rejecting both parties' submissions to the Board, was correct. In any event, it is our responsibility to review the Board's decision independently of the position taken by either party before the Board, and exercising that responsibility we conclude that the Board's decision must be upheld.