**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

**2014 MSPB 67**

Docket Nos. AT-0752-13-0217-I-1
AT-0752-13-0317-I-1
AT-0752-13-0589-I-1

**Ricky N. Dawson,**

**Appellant,**

**v.**

**Department of Agriculture,**

**Agency.**

August 21, 2014

Susan G. James, Montgomery, Alabama, for the appellant.

Jerry D. Dawson, Springfield, Virginia, for the appellant.

Patsy J. Gallagher, Saint Louis, Missouri, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member
Member Robbins issues a separate, concurring opinion.

**OPINION AND ORDER**

¶1 Before the Board are three petitions for review of initial decisions concerning the appellant's indefinite suspension, removal, and application for early retirement under the Voluntary Early Retirement Authority (VERA). The agency has petitioned for review of the two initial decisions that reversed the appellant's indefinite suspension and granted his application for early retirement

and the appellant has petitioned for review of the initial decision that sustained his removal.  We JOIN the three appeals under 5 C.F.R. § 1201.36.  For the reasons set forth below, we GRANT the agency's petitions for review and REVERSE the initial decisions insofar as the administrative judge reversed the appellant's indefinite suspension and found that the appellant was entitled to a VERA benefit.  We further DENY the appellant's petition for review and AFFIRM the administrative judge's determination to sustain the removal action.

## BACKGROUND

¶2      In three separate appeals, the appellant challenges the agency's determinations to indefinitely suspend him from his GS-0301-13 position as an Area Director with the agency's Rural Housing Service in Camden, Alabama, effective November 24, 2012; remove him from his position, effective January 26, 2013; and deny his application for early retirement under VERA pursuant to authority delegated to the agency by the Office of Personnel Management (OPM).

¶3      Before turning to the analysis, a timeline is provided below that sets forth the salient facts in this case, which is based on the parties' stipulations in the appeals below.

### *Chronology of events*

#### November 2012

- **November 6, 2012** – Proposed indefinite suspension notice issued.
- **November 20, 2012** – The appellant pled guilty to a felony criminal charge of fraud by wire, radio, or television (18 U.S.C. § 1343), due to underlying facts involving his embezzling $6,225,920.76 in government funds.
- **November 21, 2012** – Decision letter issued regarding indefinite suspension.
- **November 24, 2012** – Indefinite suspension effected.

**December 2012**

- **December 5, 2012** – Email memorandum issued announcing the agency's approval of an early buyout under either the VERA/Voluntary Separation Incentive Plan (VSIP). Because the appellant was suspended during the entire month of December 2012, he could not access his agency email account and was unaware of the December 5th memorandum about the VERA/VSIP.

- **December 18, 2012** – Proposed removal letter issued.

- **December 21, 2012** – End of "window period" for employees to apply for early retirement. The rules allowed that only a single Rural Development district employee would be granted a VERA, based on seniority, as calculated by the employees' service computation dates. Ultimately, a coworker of the appellant's, who has a service computation date in 1982, was granted a VERA. The appellant's service computation date was in 1979.

**January 2013**

- **January 24, 2013** – Final removal decision letter issued based on the appellant's plea of guilty to knowingly devising or participating in a scheme to defraud and/or obtaining money or property by means of false or fraudulent pretenses, representations, or promises.

- **January 26, 2013** – Effective date of the appellant's removal.

- **January 31, 2013** – Coworker retired early and obtained a VERA.

**March 2013**

- **March 8, 2013** – The appellant applied for early retirement, requesting a VERA.

- **March 12, 2013** – The appellant was sentenced to 60 months in jail for criminal conviction. He was ordered to report to prison on May 31, 2013.
- **Date uncertain** – The agency subsequently denied the appellant's VERA request.

*See Dawson v. Department of Agriculture*, MSPB Docket No. AT-0752-13-0317-I-1 (May 16, 2013) Appeal File (AF) 0317, Tabs 5, 10.

¶4        After adjudicating the appeals, the administrative judge issued three initial decisions. In the first initial decision, the administrative judge reversed the indefinite suspension for two reasons: (1) the agency violated the appellant's constitutional right to due process; and (2) the suspension improperly occurred simultaneously with the notice of proposed removal period based on the same charged misconduct. *Dawson v. Department of Agriculture*, MSPB Docket No. AT-0752-13-0217-I-1, Initial Decision (Mar. 16, 2013) (ID 0217). In a second initial decision, the administrative judge sustained the removal action. *Dawson v. Department of Agriculture*, MSPB Docket No. AT-0752-13-0317-I-1, Initial Decision, (May 16, 2013) (ID 0317). A third initial decision ordered the agency to grant the appellant's application for early retirement under VERA. *Dawson v. Department of Agriculture*, MSPB Docket No. AT-0752-13-0589-I-1, Initial Decision, (Sept. 12, 2013) (ID 0589). The agency filed petitions for review challenging the administrative judge's determinations in the first and third initial decisions. The appellant filed a petition for review contesting the administrative judge's second initial decision.

## ANALYSIS

### The administrative judge correctly sustained the removal of the appellant and properly determined that the appellant did not prove his harmful error allegation.

¶5        As a preliminary matter, we find that the administrative judge correctly affirmed the agency's decision to remove the appellant based on his guilty plea to knowingly devising or participating in a scheme to defraud and/or obtain money

or property by means of false or fraudulent pretenses, representations, or promises. The parties stipulated that the appellant pled guilty to a charge of fraud by wire, radio, or television in federal court on November 20, 2012, and that he was sentenced to 60 months' imprisonment, beginning on May 31, 2013. Such criminal misconduct is a felony punishable by a fine or imprisonment for up to 20 years, or both. *See* 18 U.S.C. § 1343. As a result, the administrative judge correctly determined that the agency proved the charge, nexus, and that the penalty of removal was warranted. ID 0317 at 2-4. The administrative judge also properly found that the appellant failed to prove his harmful error claims. *See* ID 0317 at 4-6.

The administrative judge incorrectly reversed the indefinite suspension on the ground that the agency improperly imposed the suspension during some of the same time that coincided with the proposed removal period.

¶6      Next, the administrative judge found that, because the agency imposed an emergency or indefinite suspension that coincided with a notice period for a removal action, the indefinite suspension should be deemed improper. We disagree. It is true that, at times, the Board has held that, where an agency imposes a disciplinary or an adverse action because of an employee's misconduct, the agency is barred from subsequently taking another adverse action for the same reason. ID 0217 at 6-7 (and cases cited therein). However, the precedent relied upon by the administrative judge in the initial decision has not been universally applied by the Board or even by our reviewing court. *See Graybill v. U.S. Postal Service*, 782 F.2d 1567, 1573 n.1 (Fed. Cir. 1986) (the court held that the agency's imposition of both a suspension and a removal penalty for the appellant's arrest on charges of sexual misconduct involving a minor and his subsequent guilty plea did not constitute an abuse of discretion); *Camaj v. Department of Homeland Security*, 119 M.S.P.R. 95 (2012) (the agency indefinitely suspended the appellant based on criminal charges and then removed him on charges of conduct unbecoming a law enforcement officer and misuse of

an official government database); *Jones v. Department of the Army*, [68 M.S.P.R. 398](#), 402 (1995) (the appellant was to be indefinitely suspended through the end of the criminal proceedings and "through any proposal period for any additional action" to be taken against the appellant). Relying on the case law cited immediately above, we find that the administrative judge's reason for reversing the indefinite suspension was erroneous.

¶7 In any event, we find that the appellant is not entitled to back pay for the more than 3 weeks of the indefinite suspension period (November 24—December 18, 2012), that transpired before the agency issued the notice of proposed removal because no overlap occurred with the two disciplinary actions during those 3 weeks.

The administrative judge erroneously determined that the agency did not provide the appellant with sufficient notice of the reasons for the indefinite suspension.

¶8 Also, in reversing the indefinite suspension, the administrative judge found that the agency violated the appellant's constitutional right to minimum due process of law by failing to specifically notify him in the proposal notice or decision letter that the agency had reasonable cause to believe he had committed a crime for which a sentence of imprisonment could be imposed. The administrative judge determined that this omission necessarily prevented the appellant from knowing what standard the agency would use to decide his indefinite suspension and thus, how he must respond to the proposal. ID 0217 at 6.

¶9 We disagree with the administrative judge's conclusion that a due process violation occurred here. In *Cleveland Board of Education v. Loudermill*, [470 U.S. 532](#), 546 (1985), the Supreme Court concluded that due process requirements entail: (1) written notice of the charges against the employee, with an explanation of the evidence; and (2) an opportunity for the employee to present his account of events. Both of these factors were present in the instant case, as more fully discussed below.

¶10     For the Board to sustain the indefinite suspension under the circumstances of this case, the agency must establish by a preponderance of the evidence that it had reasonable cause to believe the appellant committed a crime for which a sentence of imprisonment may be imposed. *See* 5 C.F.R. § 1201.56(a)(ii); *Pararas-Carayannis v. Department of Commerce*, 9 F.3d 955, 957 (Fed. Cir. 1993); *Rittgers v. Department of the Army*, 117 M.S.P.R. 182, ¶ 12 (2011). The critical factor in ascertaining if the agency had reasonable cause to believe that the appellant committed a crime that could result in imprisonment is the record that the officials had before them when they effected the action. *See Barresi v. U.S. Postal Service*, 65 M.S.P.R. 656, 665 (1994).

¶11     In this case, the agency's proposal letter specifically referenced a criminal investigation, the potential for a penalty of imprisonment, and the appellant's purported confession to the misconduct at issue. AF 0217, Tab 6; ID 0217 at 3. The agency afforded the appellant the requisite substantive proposal letter, which annotated the basis for the indefinite suspension and the evidence gathered at that point and provided him a reasonable opportunity to reply in accordance with the provisions set forth in *Cleveland*. Furthermore, the appellant was reasonably aware of the grounds by which his indefinite suspension would be decided. The November 6, 2012 notice letter described "such cause" as set forth in 5 U.S.C. § 7513 and advised the appellant of the following: (a) the type of action the agency planned to take (an indefinite suspension); (b) the expected duration, pending: (1) completion of investigations for which a penalty of imprisonment could be imposed; and (2) a reasonable time thereafter while the agency decided the appropriate administrative action, to include possible removal from federal service; and (c) the reasons for the indefinite suspension. AF 0217, Tab 4, Subtab 4f. In fact, the proposal letter explained the reason for the proposed action was that:

> On June 20, 2012, Special Agent Philip Maxey, Office of Inspector General (OIG), notified [the proposing official] that: 1) you were

> under investigation for alleged embezzlement of government funds; and 2) a criminal investigation was underway and would likely result in criminal conviction. On August 16, 2012, Special Agent Maxey informed [the proposing official] that the Federal Bureau of Investigation (FBI) was also involved. Moreover, on October 5, 2012, Special Agent Maxey informed [the proposing official] that you had confessed to the misconduct under investigation and additional misconduct relating to other accounts.

*Id.*

¶12    Thus, the agency informed the appellant that: (1) information was provided to the agency in an ongoing criminal investigation; (2) the investigation concerned the appellant's alleged embezzlement of government funds; (3) a criminal investigation would likely result in criminal conviction; (4) the FBI was involved in the investigation; (5) the appellant confessed to the misconduct under investigation and additional misconduct relating to other accounts; and, as set forth below (6) the information obtained during an independent agency inquiry reflected the appellant's mishandling of customer payments he received in connection with his grant loan servicing responsibilities. *See id.* The notice letter further provided great detail in describing significant financial discrepancies regarding rural water and utilities accounts over which the appellant had responsibility and from which he embezzled substantial government funds. *See id.* In particular, the proposal letter noted that:

- The appellant received checks for $999,000 and $957,559.29 from the City of Thomasville and $799,172.79 from the West Dallas Water Authority payable to "Rural Development";[1] however, the payee on these checks reflected "Ryal Development" when the checks cleared the bank.

- The appellant endorsed a $400,000 check received from Southern Pine Electric in unused funds as "For Deposit Only." His endorsement violated

---

[1] Rural Development is the agency's department that comprises the Rural Housing Service for which the appellant worked.

[Rural Development] Instruction 1951-B, Section 1951.54(b)(3). Representatives of Southern Pine Electric and Freemanville Water System stated they provided the appellant with checks for $400,000, $90,000, and $70,000, respectively. However, there was no evidence in the agency's loan files or computer systems to indicate receipt.

- On May 9, 2012, the appellant presented the Chairman of the West Dallas Water Authority with a $799,172.79 cashier's check issued by First Community Bank on behalf of Rural Development. The check was compensation for funds he previously released prematurely to West Dallas Water Authority and which West Dallas Water Authority had returned to Rural Development. Rural Development does not have an account with First Community Bank.

- On January 11, 2010, the appellant attended Freemanville Water System's board meeting and offered a 20 percent early payoff arrangement for its loan. On April 20, 2010, the appellant also signed a letter outlining the early payoff terms in the amount of $160,000. Staff Instruction 1782-1, Section 1782.20-(a)(8) dictates that the State Director must approve such arrangements.

- On February 14, 2011, the appellant hand-delivered a cashier's check in the amount of $13,341 issued by First Community Bank to Freemanville Water System. He provided the check to compensate for an erroneous deduction of a monthly loan payment due to failure to cancel its pre-authorization debit as of February 27, 2010, its alleged loan pay-off date. As stated above, Rural Development does not have an account with First Community Bank.

- On April 27, 2011, the appellant hand-delivered a cashier's check issued by First Community Bank in the amount of $308,952.06 payable to "USDA" to the Rural Development's Area Technician. He provided the cashier's check as full payment of the Freemanville Water System loan, even though

the customer had given him a check on September 27, 2010, issued by United Bank (not First Community Bank), to pay the loan in full.

*See* ID 0217, Tab 4, Subtab 4f.

¶13        Based on the information contained in the notice of proposed indefinite suspension, we conclude that the agency provided the appellant prior notice of the specific reason for the indefinite suspension (i.e., reasonable cause to believe that he committed a criminal offense for which a term of imprisonment could be imposed).  *See Graybill*, 782 F.2d at 1573 n.1; *Hayes v. Department of the Navy*, 727 F.2d 1535, 1538 (Fed. Cir. 1984) (the court found that the proposal letter provided the appellant with sufficient due process where he had ample notice of the charge and an opportunity to respond thereto both at the agency and the Board levels, he admitted to the conviction at the Board hearing, and he never alleged that he did not know what the charge and specification covered); *Hernandez v. Department of the Navy*, 120 M.S.P.R. 14, 18-21 (2013) (the agency had reasonable cause to believe that the employee had committed a crime for which a term of imprisonment could be imposed, as required to support indefinite suspension; the employee had been arrested, arraigned, and formally charged with six misdemeanor counts, including battery and unlawful carrying of a weapon, each of which could have resulted in a penalty of at least 6 months' imprisonment); *Dalton v. Department of Justice*, 66 M.S.P.R. 429, 435 (1995) (the standard for imposing an indefinite suspension is not whether the agency could prevail on the criminal charge but, rather, whether it had reasonable cause to believe that the appellant had committed a crime punishable by a term of imprisonment at the time it imposed the suspension); *see also Crofoot v. Government Printing Office*, 823 F.2d 495, 498 (Fed. Cir. 1987) (an agency may appropriately consider a guilty plea in its determination to discipline an employee).  Therefore, we find that the agency provided the appellant with his constitutional right to minimum due process of law.  *See Pararas-Carayannis*,

9 F.3d at 958; *Dunnington v. Department of Justice*, 956 F.2d 1151, 1157 (Fed. Cir. 1992).

¶14     As an aside, given that the appellant admitted to the crime on November 20, 2012, or 4 days before the indefinite suspension began, the administrative judge's reliance on *Gonzalez v. Department of Homeland Security*, 114 M.S.P.R. 318 (2010), is misplaced. *See* ID 0217 at 4-5. In *Gonzalez*, the investigation into the appellant's misconduct that triggered the indefinite suspension was still ongoing and the agency was waiting for a possible indictment. Here, in contrast, the investigation was cut short by the appellant's guilty plea, obviating the need to complete the investigation and to await a criminal indictment. Based on the foregoing, we conclude that the administrative judge erred in reversing the indefinite suspension. Accordingly, we SUSTAIN the indefinite suspension.

The appellant failed to demonstrate good cause for his untimely filed application to retire with a Voluntary Early Retirement Authority benefit.

¶15     Finally, we disagree with the administrative judge's determination that the appellant demonstrated good cause for his untimely filed application to retire with a VERA benefit. There is no dispute that, because the appellant was serving an indefinite suspension, he lacked the only means to receive the agency's December 2012 VERA/VSIP notification during the "window" period, i.e., agency email. ID 0589 at 8. The administrative judge determined that, but for the indefinite suspension, the appellant would have received the December 2012 VERA/VSIP notification in the normal manner. ID 0589 at 8 n.9. The administrative judge further determined that, because the agency did not provide the appellant with a copy of the notification during the window period for submitting applications or at any time prior to his removal, the appellant was effectively denied the opportunity to timely apply for the December 2012 VERA/VSIP. The administrative judge concluded that, although the appellant's March 8, 2013 application for early retirement was untimely filed (i.e., filed

outside the window period), good cause existed for its untimeliness.  ID 0589 at 5.  For the reasons set forth below, we disagree.

¶16        At the outset, we note that the administrative judge correctly determined that the Board has jurisdiction over this matter.  ID 0589 at 3-4.  According to the Standard Form 50 effectuating the appellant's removal, he was covered under the Civil Service Retirement System (CSRS).  AF 0589, Tab 3, Subtab 4b, Box 30.  The Board has jurisdiction over an appeal from "an administrative action or order affecting the rights or interests of an individual" under the CSRS.  5 U.S.C. § 8347(d).  Ordinarily, such an appeal is from an OPM decision.  *Mandarino v. Department of Homeland Security*, 118 M.S.P.R. 510, ¶ 7 (2012).  Here, however, the agency approved or denied early retirement applications from Rural Development employees pursuant to an express delegation of authority from OPM, and the appellant challenges the agency's failure to grant his application pursuant to that authority.  AF 0589, Tabs 1, 6, 10; *see* 5 C.F.R. § 831.114.  Our reviewing court has held that an appeal from an adverse VERA determination under such circumstances falls within the Board's jurisdiction as "an administrative action or order" under 5 U.S.C. § 8347(d).  *Adams v. Department of Defense,* 688 F.3d 1330, 1335-36 (Fed. Cir. 2012).

¶17        The agency confirmed below that it did not issue a written response to the appellant's application.  AF 0589, Tab 8 at 2.  We conclude that the appellant was not required to wait for the agency's written decision before filing his appeal.  The Board has held under analogous circumstances that, where OPM has delegated to an agency the authority to make an enhanced retirement coverage determination, and the agency has not issued a final decision on a claim for retirement benefits and does not intend to do so, the Board will deem the agency to have denied the appellant's request and take jurisdiction under 5 U.S.C. § 8347(d)(1).  *Mandarino*, 118 M.S.P.R. 510, ¶¶ 9-11 (concerning an appellant's request for enhanced retirement benefits available to law enforcement officers).  Similarly here, OPM has delegated to the agency the authority to make an

enhanced retirement coverage determination and the agency has not issued a final decision on the appellant's claim for benefits. Further, there is no indication that the agency intends to do so. We are not persuaded by the agency's attempt to distinguish *Mandarino* on the ground that the appellant in that case requested reconsideration from the agency, whereas the appellant in this case has not. Petition for Review File 0589, Tab 1 at 2. First, as stated above, the agency has not issued any determination concerning the appellant's request from which he could seek reconsideration. Second, because the agency has made no determination, it has not advised the appellant of any right or obligation on his part to seek reconsideration.[2] Under the circumstances of this case, we deem the agency to have denied the appellant's request for application to retire with a VERA benefit and take jurisdiction under 5 U.S.C. § 8347(d). *See Adams,* 688 F.3d at 1335-36.

¶18      We next turn to the administrative judge's determination that the agency's failure to provide the appellant with a copy of the December 5, 2012 VERA/VSIP notification during the window period excused his untimely filing of his application for early retirement. ID 0589 at 5. Here, OPM's regulations provide that an agency may limit voluntary early retirement offers, inter alia, based on "[a]n established opening and closing date for the acceptance of applications that is announced to employees at the time of the offer." 5 C.F.R. § 831.114(h)(1). Subject to exceptions not applicable here, an agency may not offer or process

---

[2] Although the court in *Adams* did not decide whether an appellant is first required to seek reconsideration of an adverse VERA determination from OPM prior to filing a Board appeal, *see* 688 F.3d at 1335-36, we agree with the administrative judge that the appellant was not required to do so, ID 0589 at 3-5. *See, e.g.*, *Melvin v. Office of Personnel Management,* MSPB Docket No. SF-0831-98-0378-I-1, 1998 WL 1981575 (Initial Decision, July 10, 1998) (stating that OPM had refused to issue a reconsideration decision concerning the determination of the appellant's employing agency that he was not entitled to a VSIP, on the ground that it lacked the authority to issue such a decision).

voluntary early retirements beyond the stated expiration date of a VERA. 5 C.F.R. § 831.114(m). As stated above, the appellant submitted a VERA application on March 8, 2013, after the agency's window period for filing applications had closed on December 21, 2012. AF 0589, Tab 1 at 12. Thus, the appellant's application was untimely.

¶19     The Board has recognized that an agency's misconduct may preclude enforcement of a filing deadline under the doctrine of equitable estoppel, at least where such estoppel would not result in the expenditure of appropriated funds in contravention of statute. *See Nunes v. Office of Personnel Management*, 111 M.S.P.R. 221, ¶ 16 (2009). We find no misconduct on the part of the agency in this case that would warrant application of this doctrine. The administrative judge appears to have concluded that the agency effectively and unfairly denied the appellant the opportunity to timely apply for early retirement by indefinitely suspending him, thereby barring his access to his email, and by failing to send him the December 2012 VERA/VSIP notification during that period. ID 0589 at 5, 8. As stated above, however, we conclude that the administrative judge erred in reversing the indefinite suspension and that the imposition of the suspension was proper. Because the imposition of the indefinite suspension, and the appellant's consequent lack of access to his email, are not attributable to any agency misconduct, these circumstances do not provide a basis for waiving the filing deadline on equitable grounds.[3]

---

[3] The Board has recognized that an agency's failure to provide a notice of rights and the applicable filing deadline may warrant waiver of the deadline if a statute or regulation requires that such notice be given, *see Nunes*, 111 M.S.P.R. 221, ¶ 16. We find, however, that the agency's email announcement was reasonably calculated to provide its employees with notice of the December 2012 VERA/VSIP opportunity, and therefore satisfied its obligation under 5 C.F.R. § 831.114(h)(1) to announce to employees at the time of the offer the established opening and closing dates for the acceptance of applications.

¶20        We further find that the application of equitable principles here, notably, the doctrine of unclean hands, heavily weighs against waiving the filing deadline in this case. *Cf. Walls v. Merit Systems Protection Board*, 29 F.3d 1578, 1582 (Fed. Cir. 1994) ("'broad equitable principles of justice and good conscience' should be applied in good cause determinations") (quoting *Alonzo v. Department of the Air Force*, 4 M.S.P.R. 180, 184 (1980)).  The doctrine of unclean hands "is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." *Princess Cruises, Inc. v. United States*, 397 F.3d 1358, 1369 (Fed. Cir. 2005) (quoting *Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 814 (1945)) (an equity court has a wide range when exercising discretion to refuse to aid an unclean litigant; a court is not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion); *Special Counsel v. Filiberti*, 27 M.S.P.R. 37, 39 (the unclean hands doctrine holds that "the person who seeks equity must do equity"), *modified on other grounds*, 27 M.S.P.R. 577 (1985).

¶21        The Board has invoked the doctrine of unclean hands rarely, most notably in the context of a petition to enforce a settlement agreement.  For example, in *Wofford v. Department of Justice*, 115 M.S.P.R. 367, 373 (2010), the Board denied the appellant's petition because the Board determined that she herself breached the agreement before she became aware of the agency's breach, and her actions of filing claims against the agency with the Equal Employment Opportunity Commission and in U.S. District Court were clearly a material breach.  The Board further stated that "the appellant's actions were 'tainted with inequitableness or bad faith relative to the matter in which she seeks relief, however improper may have been the behavior of the agency.'"  *Id*. (quoting *Precision Instrument Manufacturing, Inc.*, 324 U.S. at 814); *see also Alderete v. Department of the Interior*, 100 M.S.P.R. 16 (2005) (McPhie, Chairman, separate

opinion, ¶ 13) (the employee's involuntary retirement appeal should be dismissed because she came to the Board with unclean hands).

¶22   It is appropriate to invoke the doctrine of unclean hands when there is an element of bad faith shown on the part of one or more of the litigants. *See Precision Instrument Manufacturing, Inc.*, 324 U.S. at 814. It is clear from the facts of this case that it was the appellant's misconduct, rather than any misconduct on the part of the agency, that precluded him from accessing the agency's notice. That is, the appellant engaged in a lengthy pattern of bad faith and deceitful behavior when he embezzled government funds over which he had control. *See Promac, Inc. v. West*, 203 F.3d 786, 788-89 (Fed. Cir. 2000) (the lowest bidder for a government construction project was not entitled to reformation of that contract based on the government's alleged violations of regulations during the bidding process, given that the bidder benefitted from and actively participated with the government in the challenged procurement process and thus had unclean hands and was not entitled to equitable relief); *Richards v. General Motors Corp.*, 876 F. Supp. 1492, 1511 (E.D. Mich. 1995) (an employee who back-dated asset transfer forms in an attempt to secure retroactive gains in his employer's stock purchase plan had unclean hands and was therefore precluded from asserting a claim against his employer under the Employees Retirement Income Security Act; the employee knew or should have known that back-dating the forms violated stock purchase plan rules and was "simply wrong"). Accordingly, application of equitable principles here weigh against waiving the filing deadline in this case.

¶23   Because we conclude that the appellant's untimely filing was not excused and that principles of equity preclude waiver of the filing deadline in this case, we REVERSE the administrative judge's initial decision in MSPB Docket No. AT-0752-13-0589-I-1 ordering the agency to grant the appellant's application for early retirement benefits.

## ORDER

This is the final decision of the Merit Systems Protection Board in these appeals. Title 5 of the Code of Federal Regulations, section 1201.113(c) (5 C.F.R. § 1201.113(c)).

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the United States Court of Appeals for the Federal Circuit. You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode/htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for your court appeal, you may visit our website at http://www.mspb.gov/probono for a list of attorneys who have expressed interest in providing pro bono representation for Merit Systems Protection Board appellants before the court.  The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD:


_____
William D. Spencer
Clerk of the Board
Washington, D.C.

CONCURRING OPINION OF MEMBER MARK A. ROBBINS

in

*Ricky N. Dawson v. Department of Agriculture*

MSPB Docket No. AT-0752-13-0217-I-1

¶1    I concur fully with the disposition of this case. I write separately on the issue of the appellant's attempt to claim an entitlement to a $25,000 Voluntary Early Retirement Authority (VERA)/Voluntary Separation Incentive Plan (VSIP) incentive to note the absurdity of his claim in light of equity, as discussed in the Opinion and Order, and applicable law and public policy interests that underlie this authority.

¶2    As for legal considerations, I cannot agree with the administrative judge that the appellant qualified for the VERA incentive under the law. According to the Standard Form 50 effectuating the appellant's removal, he was covered under the Civil Service Retirement System. Appeal File (AF), Tab 3, Subtab 4b, Box 30. Thus, the administrative judge's reliance on statutory and regulatory provisions for employees covered by the Federal Employees' Retirement System was inapposite. Under 5 U.S.C. § 8336(d)(2)(C), an employee is entitled to an immediate annuity, so long as he "has not been duly notified that [he] is to be involuntarily separated for misconduct or unacceptable performance." Likewise, under 5 U.S.C. § 3521(2)(iii), an employee is not eligible for a VSIP if he is "in receipt of a notice of involuntary separation for misconduct or unacceptable performance."

¶3    Here, the proposed removal letter "duly notified" the appellant that he was going to be fired. The letter was issued on December 18, 2012, or 3 days before December 21, 2012, the end date for the "open window" period for the submission of early retirement applications. Based on the undisputed facts, when the appellant applied to retire, he had already received a notice of removal letter. I believe that the law dictates that the appellant was rendered ineligible to apply

for the VERA incentive on that basis. I therefore would find, as did the administrative judge, MSPB Docket No., AT-0752-13-0589-I-1, Initial Decision at 7-9 (Sept. 12, 2013), that the agency did not commit harmful error by failing to notify the appellant of the VERA/VSIP "open window" period, given his receipt of the notice of proposed removal prior to the end of the "open window" period, *see Hickman v. U.S. Postal Service*, 991 F.2d 810 (Fed. Cir. 1993) (Table) (finding that the appellant, a Postal supervisor criminally convicted of falsifying stamp destruction certificates, was not entitled to retire with an early retirement incentive because she received the early retirement incentive package after her removal became effective; therefore, this retirement option was never available to her).

¶4        As for public policy considerations, Title 5 and Office of Personnel Management (OPM) regulations give an agency the ability to request VERA authority when the agency believes it would serve its need to reduce personnel levels due to substantial workforce restructuring or reshaping initiatives. These include, but are not limited to, delayering, reorganization, reductions in force, or transfers of function.[1] *See* 5 U.S.C. § 8414(b)(1)(B); 5 C.F.R. § 842.213(c); *see, e.g.*, *Perrine v. General Services Administration*, 81 M.S.P.R. 155, 160-63 (1999). Stated differently, an agency generally grants VERA incentives for the mutual benefit of the agency and the employee. Indeed, that is what happened here. The agency in its December 2012 VERA/VSIP notice stated that it had asked OPM to approve its request to offer VERA incentives to employees due to budgetary reductions and a need to re-examine priorities. AF, Tab 4 (attachment). I believe that, while this appellant would certainly benefit by receiving $25,000, there would be no benefit to the government to grant a VERA to an employee who left the workforce due to his impending incarceration.

---

[1] *See* http://www.opm.gov/employ/html/vsi.htm.

¶5   Recalling the facts of this case, on November 20, 2012, the appellant pled guilty to a felony criminal charge of fraud by wire, radio, or television (18 U.S.C. § 1343), due to underlying facts involving his embezzling $6,225,920.76 of government funds.  Effective January 26, 2013, he was removed from his position.  He applied for early retirement under the VERA authority on March 8, 2013, 4 days before he was criminally convicted and sentenced to 60 months in jail.

¶6   Clearly the appellant's primary motive in retiring at that point was to allow him or his dependents the opportunity to continue receiving regular income in the form of an immediate annuity.  The VERA incentive had little, if anything, to do with his motive for retiring, especially given that he might have qualified for immediate retirement based on his more than 33 years of service.[2]  AF, Tab 1; Tab 3, Subtab 4b.  It would be a travesty of justice for the appellant to get $25,000 after he admitted to embezzling millions of dollars of government funds.

¶7   Occasionally, there are calls from Congress or the public to revoke certain federal employment benefits upon the commission of a crime.  And at times federal benefits may be revoked or limited after a criminal conviction.  *See* Federal Statutes Imposing Collateral Consequences Upon Conviction (Department of Justice), available at http://www.justice.gov/pardon/collateral _consequences.pdf; Internal Exile: Collateral Consequences of Convictions in Federal Laws and Regulations (the American Bar Association and the Public Defender Service for the District of Columbia) at 38-41 (2009), available at http://www.pdsdc.org/Resources/Publication/Collateral%20Consequences%20o

---

[2] The box containing the date of birth on the Standard Form 50 effectuating the appellant's removal is redacted, so his actual age is not in evidence.  AF, Tab 3, Subtab 4b, Box 3.  But newspaper articles cited by the agency in the removal letter state that the appellant was 54 years old at the time he entered a guilty plea.  If that is true, then it is not clear, when he applied to retire 4 months later, if he met the age requirement of 55 years for immediate retirement under the Civil Service Retirement System.  *See* 5 U.S.C. § 8336(a).

20

[Conviction%20in%20Federal%20Laws%20and%20Regulations.pdf](Conviction%20in%20Federal%20Laws%20and%20Regulations.pdf).  Some of these include:

- An individual convicted of certain offenses related to national security may be prevented, as would be his survivor and his beneficiary, from obtaining an annuity or retirement pay from the United States or District of Columbia governments, and may be subject to additional penalties concerning his collection of old-age, survivors, or disability insurance benefits, or health insurance for the aged and disabled. *See* [5 U.S.C. § 8312](5 U.S.C. § 8312); [42 U.S.C. § 402](42 U.S.C. § 402)(u)(1).

- An individual who is confined for over 30 days in a jail or penal institution upon conviction of a criminal offense may not receive old-age, survivors, or disability insurance payments for any month in which he was incarcerated. *See* [42 U.S.C. § 402](42 U.S.C. § 402)(x)(1)(A)(i).

- An individual convicted of fraud in applying for or receiving federal workers' compensation benefits may not receive those benefits for any injury occurring on or before the conviction. *See* [5 U.S.C. § 8148](5 U.S.C. § 8148)(a).

- Federal workers' compensation benefits may not be paid to the offender (but may be paid to dependents) during a period of incarceration resulting from a felony conviction of a federal employee. *See* [5 U.S.C. §§ 8148](5 U.S.C. §§ 8148)(b)(1), (3).

- Certain convicted drug offenders may be made ineligible for grants, licenses, contracts, and other federal benefits, such as Pell grants, federal Stafford Loans, federal PLUS Loans, and federal work study. *See* [20 U.S.C. § 1091](20 U.S.C. § 1091)(r), [21 U.S.C. § 862](21 U.S.C. § 862).  In addition, they may be denied food stamps or temporary assistance to needy families.

- Individuals convicted of illegally manufacturing or producing methamphetamine on the site of federally-assisted housing may be

evicted and permanently barred from occupying such housing and from receiving federal low-income housing assistance. *See* 42 U.S.C. § 1437n(f).

- Individuals convicted of serious sex offenses also may be ineligible for federally-assisted housing. *See* 42 U.S.C. § 13663.
- An individual found guilty of mutiny, treason, sabotage, or rendering assistance to an enemy of the United States, as well as other enumerated federal crimes, forfeits his rights to all veterans' benefits, including pension, disability, hospitalization, loan guarantees, and burial in a national cemetery. *See* 38 U.S.C. § 6104 and 38 U.S.C. § 6105.

¶8      I believe that in this particular case the law is clear that the appellant is not entitled to a VERA retirement payment. In light of the above examples (and there are many others) of statutory provisions to restrict criminals from receiving federally supported benefits, I believe that the appellant's conviction of embezzling millions of taxpayer dollars, most of which money will never be recovered, should, as a matter of law and public policy, also prevent him from enjoying any potential right to a federal benefit in which he is not legally vested, regardless of whether he might otherwise be qualified.


_____
Mark A. Robbins
Member